**DEAN v. CONE et ux.**

**No. 14789.**

Court of Civil Appeals of Texas.

Dallas.

June 18, 1954.

Rehearing Denied July 16, 1954.

Edward C. Fritz, Dallas, for appellant.

Robert H. Hughes, Dallas, for appellees.

CRAMER, Justice.

Appellant Dean is the surviving father of the minor child, Charles Ray Dean, born July 13, 1944; the natural mother died July 5, 1949 while separated but not divorced from Dean. Appellees here are the maternal grandparents of Charles Ray Dean who has been in their custody since the death of his mother. Appellant on June 6, 1952 applied for a writ of habeas corpus, seeking custody of his minor son. Appellee grandparents answered fully and by cross-action sought the custody of the child.

After a hearing, the trial court denied the writ and left the child in the custody of the grandparents. From such judgment appellant has duly perfected this appeal and here briefs two points of error, in substance: (1) Error in hearing, during the trial, in chambers, with appellant and appellees and their attorneys excluded, and in the presence of only the judge, court reporter and a member of the Chief Probation Officer's staff, the testimony of the child, Charles Ray Dean; (2) error in denying the father custody of the child because the evidence was insufficient to support the judgment rendered. The prayer is for reversal and rendition of judgment awarding him custody, or in the alternative for such relief as he is justly entitled to.

The evidence of the child, transcribed for the record here, in substance was that he would be nine years old the next month; that he understood his grandparents were trying to settle his custody and that the judge is concerned as to whether or not he will be better off or happier in the home of his father or in the home of his grandparents; he wanted to live with his grandmother because that is the only home he ever had, and "besides that is the only home I hope I ever do have—I have lived with my grandmother all my life, except for, you know, just a little while." He testified that he does not enjoy "too much" his visits with his father every two weeks; that when he is in his daddy's home, his daddy, Margaret (his father's present wife), Paul and Helen (Margaret's two children) play games, sometimes; he does not like to play with Helen and Paul because "Helen is always picking fights with me"; she has struck him—did so last on the Sunday before when he, Paul and Helen were lying on the bed; Paul was in the middle and he and Paul were trying to push Helen off; he had to change his clothes in that room; Helen would not go out, although he asked her to leave; "we asked her, and done everything, that was why we were trying to get her off the bed, because Paul was going to change his clothes"; he called his daddy and after his daddy called Helen several times, she went out; he had not taken off his clothes at the time, but Paul was starting to, when Helen went out; about a year before that, she walked into the hall and asked him to pull down his pants, but when he told her to shut up and go on, she went into the kitchen; that was the only time it happened. The boy said that one reason he does not like to go to his father's home is: "Daddy gets in that car and I am scared to ride with him because he goes over eighty miles an hour; sometimes he goes about a hundred—hundred miles an hour, sometimes. He was going ninety the other day"; he knew, because he was in the front seat and could see the speedometer; it occurred in Oak Cliff where the drive-in theatre is; his father was going eighty miles an hour under a little bridge, and he hit a little bump and it threw the car at least four feet off the ground; Helen and Paul were in the car; he doesn't like his father's present wife "because she is always mean to me, and slapping me and

hitting me, and one time she told me to go get * * * a bigger box of cream of wheat, and I started, and Helen ran in front of me, and I got two little boxes." That she told him to get a bigger box and when he started to, Helen ran in front of him and he hit her for doing it, and then "Margaret hit me in the stomach as hard as she could." This had happened about four months before. The boy said that neither his daddy nor his grandmother instructed him how to answer and there was nothing else he wanted to tell.

After the juvenile officer, the court reporter, and Charles Ray Dean returned to the courtroom, appellant was allowed to make the following objection:

"The petitioners having been advised by the court that the boy Charles Ray Dean, a minor child, had been sent with the representative of the Juvenile Court, Jean Lynch White, for an interview, and that it was contemplated at the end of this interview for Jean Lynch White to take—to ask questions of the minor child before the court reporter, in the absence of counsel and the court, and advised the court through their counsel that they would not agree to waive the formalities of the proper oath and testimony with both counsel present representing the petitioners and the defendants, respondents, and nevertheless, the Juvenile Representative, Jean Lynch White, has interviewed the minor child in the absence of counsel or parties or the court and has asked questions which have been transcribed, and the answers to which have been transcribed before the court reporter in the absence of the court and the counsel, and without an oath having been officially administered to the child. Therefore, the petitioners, Charles K. Dean and others, object to this unauthorized proceeding and object to any testimony taken in their absence and in the absence of their counsel, and object to any hearsay report of such testimony for the reasons that the statements of the witnesses are not under oath and are hearsay and were not in the presence of the parties or their counsel, or the court, and were not taken in court."

Later, after the trial was concluded, the parties through their attorneys, by written agreement filed in the cause, stipulated as follows:

"Come now the plaintiff and defendants, by their attorneys, and stipulate the following facts: (1) Jean Lynch White is an employee of the Chief Probation Officer of Dallas County, Texas. (2) Jean Lynch White interviewed the minor child, Charles Ray Dean, being ordered to do so by the court, in the absence of plaintiff and defendant and their attorneys or representatives. (3) Jean Lynch White reported her findings to the trial court outside the presence of the parties and their attorneys. (4) The court ordered the reporter to take a question and answer report of part of the interrogation of the minor child, Charles Ray Dean, in the absence of plaintiff, defendant and their attorneys. (5) Plaintiff had no opportunity to cross-examine Charles Ray Dean during this interview. (6) The court listened to a reading of this question and answer statement taken of the interview between Jean Lynch White and Charles Ray Dean. (7) The court heard the above reading outside of the presence of the parties and their counsel. (8) The court heard a report from Jean Lynch White covering her interview with the minor child, Charles Ray Dean, of the unrecorded portion of that interview. (9) The court heard the above report outside of the presence of the plaintiff, defendant, their counsel and representatives. (10) Jean Lynch White is the same person as Jean Lynch who as Assistant Probation Officer of Dallas County, Texas was the petitioner in cause No. 2522–A, ex Parte Helen Hawbecker, in the 14th District Court of Dallas County, Texas. Said cause was for the purpose of declaring Helen Hawbecker a dependent and neglected child by reason of parental mistreatment. (11) The above cause was brought against J. Patrick Hawbecker and Margaret Hawbecker as parents of Helen Hawbecker. (12) The defendant, Margaret Hawbecker, in the above cause, is the same person as Mrs. Charles K. Dean in this present suit, and wife of plaintiff

'Charles K. Dean. Stipulated and agreed this 20th day of August, 1953."

The material question here is whether or not the evidence, as above set out, influenced the court's findings and judgment denying the father the custody of the child.

In Hollingsworth v. Kohler, 195 S.W.2d 563 at page 566, syl. 2 and Sparks v. Gandy, 213 S.W.2d 559 at p. 561, syl. 2, the Waco and Beaumont Courts of Civil Appeals each held that where the judgment involving custody is based partly on the report of the supervisor of the county welfare unit, without giving the father an opportunity to examine the supervisor or those giving the information under oath, such was reversible error.

Here the court heard the evidence while the parties were excluded from the room and appellant was deprived of the right to cross-examine the child; the court also heard evidence from the assistant juvenile officer of an unrecorded portion of the interview in the absence of the parties or their representatives or attorneys.

As to the rights of third persons, including grandparents, as against the father or mother of the child to the child's custody, see Lynch v. Wyatt, Tex.Civ.App., 191 S.W.2d 499; 6 Tex.Law Review 389; 27 Tex.Law Review 387; 6 Baylor Law Review 80; and Carter v. Cade, Tex.Civ. App., 236 S.W.2d 829 (writ ref.).

Under the record here we cannot say the result would have been the same had the appellant had the opportunity to hear the direct examination and to cross-examine the witness in open court, and must therefore hold that it was reversible error for the court to hear the evidence above set out in substance outside the presence of the parties and over their objection, and to deny cross-examination by the parties.

Point 1 is sustained.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.