### MARTIN v. MARTIN.
### No. 2152.

Court of Civil Appeals of Texas. Waco.

Oct. 19, 1939.

Reed & Cannon, of Groesbeck, and Roy Creighton, of Mineral Wells, for appellant.

T. G. Martin, in pro. per.

ALEXANDER, Justice.

In 1935, T. G. Martin obtained a divorce from his wife, Eula Kia Martin. At that time the trial court awarded the custody of the minor child, Billie Martin, who was then five years of age, to the wife during the school period and to the husband during the remainder of the year, with the understanding that the party having the minor in custody should provide for his support and education and see that he attended church and Sunday school regularly. When the husband obtained custody of the child for the summer of 1938, he kept the child in his possession and refused to surrender it to the wife at the beginning of the school term of that year. Mrs. Martin sued out writ of habeas corpus for the custody of the child. T. G. Martin answered and alleged that since the entry of the original decree there had been a change in conditions which necessitated setting aside the original judgment and prayed that he be allowed the full custody of the child. Mrs. Martin likewise alleged a change in conditions and sought the full custody of the child. Upon a trial before the court without a jury, the full custody of the child was awarded to the husband subject to visits at reasonable times by the child's mother. Mrs. Martin has appealed.

No complaint is made of the insufficiency of the pleadings of either party and for that reason the pleadings need not be detailed at this time.

The fact that the court in its original decree awarded the child to the mother for part time establishes a finding that the mother was at that time a suitable person to have the custody of her child. Swift v. Swift, Tex.Civ.App., 37 S.W.2d 241. The burden was on the father to prove that a change in conditions had

arisen such as to require a new decree depriving the mother of the custody of the child. 15 Tex.Jur. 681; Grego v. Schneider, Tex.Civ.App., 154 S.W. 361.

Among other things, T. G. Martin charged that Mrs. Martin had accepted employment in and frequently visited beer joints and other places where intoxicating liquor was sold, and that she drank beer and danced in public places and allowed the boy to visit such places with her while profane language was being used therein. Upon the trial he wholly failed to prove any of these charges. No evidence whatever was introduced tending to reflect on the moral standing of Mrs. Martin. We therefore give no further consideration to these allegations.

It was charged that Mrs. Martin had failed to keep the boy in school. The evidence showed that the child had attended school regularly each year during the time he had been in the custody of Mrs. Martin, except the year 1937. During that time he lost about thirty-five days from school. The evidence conclusively established that on one occasion during that year he was out of school for seventeen days on account of the mumps, and that the balance of the time was lost due to illness from pneumonia or some similar ailment. It was also alleged that she failed to send the child to Sunday school. She and the boy were the only ones who testified on this issue, and both stated that he was always sent to Sunday school when the weather would permit. These charges were therefore not sustained.

T. G. Martin testified that when he went to get the child in the latter part of May 1936, the child was dressed in overalls and was barefooted, and that one ear was abscessed. It appears, however, that although he secured custody of the child the latter part of May, he did not take him to a doctor for treatment for the abscessed ear until June 16th, and the doctor who treated the child at that time stated that the abscess was of recent origin. Mrs. Martin denied that the boy's ear was infected at the time Martin received custody of him. There was no evidence whatever that Mrs. Martin was in anywise negligent in failing to treat the infected ear while the boy was in her custody. The evidence showed that during the previous year Mrs. Martin had caused the boy's tonsils to be removed at her own expense and without any assistance from the child's father.

The evidence showed that the infected ear was probably caused by the previous trouble with the tonsils. Said T. G. Martin further testified that when he received the custody of the child on May 25, 1937, he was dressed in overalls, was barefooted and unclean; that his toes were bruised and his heels blistered, and he had to carry his shoes in his hands. He also testified that his arms and forehead were infected, and that one of his front teeth was infected and had to be pulled. He admits, however, that he did not take the child to a doctor for treatment for the infections on his arms until September 4th of the same year. The doctor who treated the child at that time stated that the infections were probably due to scratches. Mrs. Martin denied that anything was wrong with the child at the time the father obtained custody of him. The boy testified that he injured his front tooth by falling against a chair. Again, no evidence whatever was introduced tending to show how long these infections of the arms or of the tooth had existed nor that they had lasted so long as to justify the inference that Mrs. Martin had been negligent in failing to have such ailments treated. The said T. G. Martin further testified that when he secured custody of the child in the latter part of May 1938, he found him to be undernourished and underweight, and that his gums were infected with pyorrhea. It appears, however, that he did not take the child to a doctor for these ailments until July 5th, which was five or six weeks after he had received custody of the child. He further testified that the child had one ear torn loose, but he does not appear to have ever taken the boy to a physician for treatment for this ailment. Mrs. Martin denied that there was anything wrong with the child at the time he left her custody. Again, no evidence was introduced to show that Mrs. Martin was in anywise negligent in failing to have the boy treated for these alleged ailments. The fact that the boy was dressed in overalls, his toes bruised, and his heels blistered, and on one occasion was found to be underweight constitute no ground for declaring the mother to be an unsuitable character to have the custody of her son. "Stumped" toes and blistered heels are the common lot of the most husky boys. Overalls and dirty faces are not uncommon. Every parent who rears a child is at sometime or another confronted with the problem of the child being overweight or underweight. These are com-

mon ailments, and the fact that they were found to exist when the father secured custody of the child from the mother is no evidence that the mother had been negligent in failing to correct them.

■ The evidence showed that Mrs. Martin owned her own home in Grayford and that it was free from encumbrance. Her mother, who is a widow, owns a large farm within a few miles of Grayford. The farm is free from encumbrance, and, in addition, she owns several thousand dollars worth of notes. Mrs. Martin and the child and Mrs. Martin's mother live in Mrs. Martin's home in Grayford in the winter, and Mrs. Martin and her mother live on the farm in the summer. Mrs. Martin's mother is willing to and does assist in rearing the child. She is clearly financially able to do so. The boy, who had been with the father for several months at the time of the trial and who was friendly to the father, testified that there was no difference in the treatment received by him while he was in his mother's home from that received by him while he was in his father's home. He said that he was fed about the same in both homes and was as willing to live in one as the other. He testified that he bathed more often in the summer months than in the winter months, but that he was kept clean while in each of the homes. We have been unable to find any substantial evidence that would justify the court in depriving the mother of the custody of this child.

■ With reference to the mother's plea for full time custody of the child, the evidence shows that since the divorce T. G. Martin has re-married. His wife is about twenty years of age and they now have a child of their own who is about six months old. His wife says that she is willing to assist in rearing the child here under consideration. Necessarily, her time is largely consumed with her own child. Martin owns a small house in Mexia and appears to be anxious for the custody of the boy, but he is a truck driver and his duties as such require that he be away from home for a week or ten days at a time. During his absence, the boy would be in the sole custody of the step-mother, who is in nowise related to him. In view of the fact that the father is required to be away from home so much of the time, it readily appears that the boy would receive better parental care in the custody of his mother than he would if left with his father.

In our opinion, the original decree awarding the child part time to each of the parents was unwise. Certainly, no child could grow up normally when it is hawked about from one parent to the other with the embarrassing scene of changing homes at least twice each year. Such decrees are usually prompted by a laudable desire to avoid injuring the feelings of the parents, but the net result is a permanent injury to the child without any substantial benefit to the parents. In addition to the lack of stability in his surroundings, the child is constantly reminded that he is the center of a parental quarrel. It is readily apparent that such practices are calculated to arouse serious emotional conflicts in the mind of the child and are not conducive to good citizenship. Moreover, the parents are continuously pitted against each other in the unenviable contest of undermining the child's love for the other parent. Each parent is afraid to exercise any sort of discipline for fear of losing out in the contest. As a result, the child is reared without parental control. Such decrees by which the child is awarded part time to each of the parents have been condemned by numerous decisions. 19 C.J. p. 344, sec. 797, and authorities cited in Note 27; Swift v. Swift, Tex.Civ.App., 37 S.W.2d 241.

■ In the case of Swift v. Swift, Tex. Civ.App., 37 S.W.2d 241, 242, this court, in speaking through Chief Justice Gallagher, said: "In determining to which of the parents the custody of a child should be awarded, its best interest and welfare are the paramount issues. The rights of the respective parents growing out of their relation to, affection for, or interest in such child are to be determined and fixed by the judgment rendered, but such rights are subordinate to its best interest and welfare. * * * The fact that the court awarded the custody of the child to appellant for one-half the time necessarily involves a finding that she is a suitable person for such responsibility and that the welfare of the child will best be served by committing it to her care for the time allotted."

It is a well known fact that young children need the care and attention of their mother, and other things being equal, she should be given the preference in awarding the custody of such child. 15 Tex.Jur. 667;

19 C.J. 945. In view of the fact that the original decree awarding the child for part time to each of the parents was an unwise one, and in view of the fact that the father, on account of the character of his employment, must necessarily be away from home a large part of the time, we are of the opinion that the best interests of the child will be preserved by awarding the full custody of the child to the mother, subject to the right of the father to visit it at all reasonable times.

The judgment of the trial court will be reversed and the cause remanded with instructions to enter judgment in favor of Mrs. Martin, awarding her the full custody of the child in question, subject to the right of the father to visit him at all reasonable times.