## AMEND v. AMEND.

No. 10238.

Court of Civil Appeals of Texas.

Austin.

April 28, 1954.

Rehearing Denied May 19, 1954.

Looney, Clark & Moorhead, Everett L. Looney, R. Dean Moorhead, Austin, for appellant.

E. H. Smartt, J. C. Hinsley, Austin, for appellee.

GRAY, Justice.

This appeal is from a judgment changing the custody of three minor children from their mother, appellant, to their father, appellee. The minors are: Wesley Amend, a boy, now 14 years of age; Frances Amend, a girl, now 12 years of age, and Grace Ann Amend, a girl, now 10 years of age.

Appellee and appellant were formerly husband and wife. They were married in Austin in 1937, and thereafter lived in different places in Texas finally moving to the State of Florida in 1946. On various occasions appellee left appellant and on

September 22, 1949, appellant was granted a divorce from appellee and was awarded the custody of the three minors by a circuit court in Florida. It appears that appellee was not a resident of the State of Florida at the time of the divorce and the court retained jurisdiction of the cause and of the parties "for such further orders and decrees pertaining to the custody and support of the said minor children and personal alimony of the plaintiff should the defendant come personally within the jurisdiction of this Court, as to the Court may seem proper."

After this decree of divorce appellant maintained herself and the three children by working, with funds received from property in Florida and some assistance from payments made by appellee.

Appellee acquired residence in the State of Nevada and on February 11, 1950, obtained a decree of divorce from appellant which in part provided:

"* * * that plaintiff is ordered and directed to convey all community property, if any there be, both real and personal situate in the State of Florida, to defendant, as and for the support and maintenance of herself and the minor children; that the plaintiff pay unto the defendant for the support and maintenance of the three minor children the sum of $15.00 per month per child commencing with the 15th day of February, 1950, and payable on the 15th day of each and every month thereafter, * * *"

Thereafter appellee reduced his payments to appellant from $20 per month per child to $15 as provided in the decree.

The record does not show that appellee conveyed the property in Florida to appellant but it does appear that appellant under a power of attorney sold property there and has acquired an apartment house in which she has an equity of approximately $9,000. She maintained a home for herself and children in one of the apartments, and by renting the other apartments, by working and with the $45 per month re-

ceived from appellee she has clothed and fed the children and kept them in school.

After securing the Nevada divorce and in February, 1950, appellee remarried in Yuma, Arizona. Soon thereafter he came to Austin where he and his present wife now reside and since which time he has engaged in practicing his profession—Doctor of Chiropractic.

It appears there has been a great deal of controversey between appellant and appellee as to the amount of money he was contributing for the support of the children, that appellant filed some character of complaint in Florida against appellee and that out of this proceeding, and through the domestic relations' court or the district attorney's office in Austin, appellee has raised his payments to $120 per month. This being the sum paid by him from August, 1952 up to the time the children came to Austin as hereinafter related.

During the summer and prior to September, 1953, appellant became physically disabled and found it necessary to have operations on her teeth and gums for which reasons it became advisable to arrange for the welfare of the children.

Through her own and her brother's communications with appellee it was agreed that the children would be sent to appellee at Austin. However before appellant would consent to send the children she required that appellee sign and forward to her a written instrument evidencing the agreement. The following instrument was so signed and forwarded:

"The State of Texas
"County of Travis

"Before me, the undersigned authority, on this day personally appear Dr. L. L. Amend, who being by me duly sworn deposes and says:

"'I, Dr. L. L. Amend, the undersigned, hereby swear or affirm, promise, and bind myself that I will not make any attempt or effort to retain permanent custody and possession of my children, Wesley Eugene Amend, Frances Kay Amend, and Grace Ann Amend, by my former marriage with Frances G. Amend; which children were placed in the custody of the said Frances G. Amend by order of the Court in the divorce proceeding between Frances G. Amend and the undersigned and which said children are to make their residence temporarily with the undersigned at 1627 Barton Springs Road; such temporary residence being with the permission of the said Frances G. Amend and subject to termination by the said Frances G. Amend without notice to the undersigned.'

"/s/ Dr. L. L. Amend D. C.
"Sworn to and subscribed before me on this the 11th day of September, 1953.
"(Seal)        /s/ Sam Kimberlin, Jr.
                    Notary Public,
                    Travis County, Texas"

Thereafter, in keeping with a telephone conversation between appellee and appellant, the children were taken out of school in Florida, placed on a bus and sent to New Orleans where appellee met them and brought them to his home in Austin. They arrived in Austin on or about Sunday, September 20, 1953, and entered public schools the following Tuesday, each attending a different school. On October 21, 1953, that being Grace Ann's birthday, appellant arrived in Austin, called at the schools, took the children with her for a while and returned them to appellee's home that afternoon. Appellee informed appellant that a birthday party had been planned for Grace Ann at his home for that evening. The children attended the party and afterwards were picked up by appellant and returned to the home about 9 p. m. that night, however Grace Ann spent the night with her mother.

Thereafter appellant often picked the children up at their schools—usually after school hours, and also at appellee's home. She testified that these pick-ups were with appellee's consent and that she always

called the home before going there for the children.

On November 4, 1953, appellee filed his petition for a writ of habeas corpus, prayed that the care and control of the said minors be awarded to him, and pending the hearing that appellant be restrained from coming upon his premises, going to or about the schools attended by the minors or in any manner interfering with his custody and control of said minors.

A temporary injunction as prayed for was granted and upon a hearing appellee was awarded the exclusive custody and control of said minors from December 18, 1953 to June 1, 1954, and thereafter from September 1 to June 1 with the right of their visitation with appellant from nine o'clock a. m. to five o'clock p. m. on the third and fourth Sundays of each calendar month, and from one o'clock p. m. to midnight on December 24. The decree awarded custody of the minors to appellant from June 1 to September 1 of each year with their right to visit appellee from nine o'clock a. m. to five o'clock p. m. on the third and fourth Sundays of each calendar month.

There was no request for and the trial court did not file separate findings of fact and conclusions of law. However the judgment recites:

"* * * that Defendant, Frances G. Amend, former wife of Petitioner, Lorene L. Amend, was divorced from the said Lorene L. Amend in the State of Florida on September 22, 1949, since which time she has had the custody and control of said minor children until September 20, 1953; * * * that on September 20, 1953, Defendant, Frances G. Amend, voluntarily delivered such minor children into the custody of Petitioner, Lorene L. Amend; that since September 20, 1953, such minor children have lived in the home of Petitioner, Lorene L. Amend, have been supported and cared for by him, and have been under his custody; that the Defendant, Frances

G. Amend, has interferred with the custody and control of Petitioner, Lorene L. Amend, of such minor children and that such interference by the said Frances G. Amend is not to the best interest of said children; that since September 21, 1953, said minor children have been attending schools in the Public Schools of the Austin Independent School District; that it would not be to the best interest of said children before the end of the present school year to remove said children from the home of Petitioner, Lorene G. Amend, or from the Public Schools which they are now attending; that continued interference by the Defendant, Frances G. Amend, in the daily lives, activities, home life and education of such minor children during the present school year would not be to the best interest of such minor children; that the evidence in this Cause demonstrates that there have been substantial changes in the circumstances and conditions of the parties thereto and of said minor children since September 22, 1949, such as to require changes in the custody, care and control of such minor children; that under existing financial circumstances of the Petitioner, Lorene L. Amend, the sum of Forty Dollars ($40.00) per month would be, and is, a reasonable and proper sum for Petitioner, Lorene L. Amend, to contribute for the care and support of each of said minor children at such times as such minor children, or any of them, are living with Defendant, Frances G. Amend; and that it is for the best interest of said children that they remain within the jurisdiction of this Court; * * *"

The Florida divorce decree and the Nevada divorce decree awarded the custody of the three children to appellant. Certified copies of these decrees were before the trial court and whether one or the other, or both, be treated as legally binding on the parties, it is certain that the issue of custody of the minors was adjudicated and it was then determined that

their best interest required that their custody be awarded to appellant. (The trial court's judgment mentions only the Florida divorce.)

■ If the original decree is to be modified or changed it is necessary that the evidence show that since that decree conditions have so changed as to require a new decree depriving appellant of the custody of the minors. Martin v. Martin, Tex.Civ.App., 132 S.W.2d 426; Pearson, v. Pearson, Tex.Civ.App., 195 S.W.2d 188; Roberts v. Tippett, Tex.Civ.App., 239 S.W. 2d 859. That is to say the evidence must show that since the original decree conditions have so changed that it can reasonably be said that it would be injurious to the welfare of the minors to leave their custody as originally adjudicated. Neal v. Medcalf, Tex.Civ.App., 244 S.W.2d 666.

■ The fact that the trial court awarded part time custody of the minors to each of the parties sufficiently establishes that they were each fit and proper persons to have such custody. Martin v. Martin, supra.

The statement of facts before us consists of 590 pages, a large portion of which relates to the domestic difficulties of the parties from the time of their marriage to their divorce, the wanderings of appellee and his failure during his absence to contribute to the support of his family. However there is no evidence that the children were neglected by appellant but on the contrary all the evidence shows that the minors are well mannered, well behaved and capable children. They have been taught to, and do, regularly attend church and Sunday School and are reasonably well advanced in their school work. The record shows that they are such children as parents generally, and as the parties here indicate they are, would be proud of.

We attach no particular significance to the facts that appellant arrived in Austin on Grace Ann's birthday, went to the schools and got the children, took them with her for a part of the day, returned them to appellee's house for the birthday party and later picked them up for a further visit. At that time she had been separated from them for a month or more. It would border on the unnatural for a mother to act otherwise, certainly such facts are not to be construed as evidence adverse to her. Neither do we attach particular significance to the facts that appellant often picked up the children at school and at appellee's home. As already stated appellant said such pick-ups were with appellee's consent. Appellee did not deny this although in his testimony he plainly indicated it was against his wishes and termed it interference with his custody. There is no evidence of any interference by appellant with the minors' general attendance and progress at their schools. There is evidence that Wesley was working after school hours and at other times at a kiddie park near appellee's home, that his grades at school were below what appellant thought they should be and that she insisted that he give up his work which he did. Wesley himself testified that this work interfered with his home duties (apparently school work) and made him sleepy in his classes.

In connection with the foregoing events it is to be noted that appellant had been awarded the exclusive custody of the minors by a proper decree which decree had not been modified or at such times even attacked. Further the minors were with appellee under a temporary agreement with appellant's consent and subject to being terminated by her without notice. Appellee recognized these facts because he testified that he told his present wife they could not object to appellant taking the children because she had their custody. He further testified relative to the hearing on the temporary order that he was present.

"Q. And at that time you heard the Judge direct Mrs. Amend not to act as though she was in Florida, but she was up here. You heard that? A. There has not been any interference since the Judge explained that.

"Q. In other words, in so far as you know, she implicitly carried out the instructions of the Court? A. Yes, sir."

Wesley testified that after his father left them in Florida they had everything in the way of food and clothing that they needed and had plenty of clothes for school. He said he did not mean he had everything he wanted. Such wants appear to be evidenced in part by his testimony that he was enrolled in the boy scouts and by a letter, introduced by appellee, requesting appellee to send him money to enable him to attend a boy scout's camp. This letter was not answered however appellee said he tried to call Wesley on the phone but did not get him. Other letters from the children to appellee were introduced in evidence. Some of such letters requested appellee to send them money. One letter from Frances expressed her preference to live with her mother.

Even if we agree that such letters express ill feeling toward appellee there is no evidence that appellant was responsible for the letters or prompted the children to write them. Appellant denied being responsible for the letters and said she had taught the children to love their father, to be kind to everybody and not take sides. Wesley testified that he had "a pretty high regard for both of my parents" and that he did not dislike one and favor the other. He further said he had always been happy and did not say that he had better treatment by one parent than the other. The girls did not testify and in the absence of evidence to the contrary we think normal children who had been taught that appellee was their father and that they should love him would feel some resentment toward him for his absence and inattention to them. Writing letters asking for money and expressing their dislikes would be the natural act of normal children.

The evidence does not show a poisoning of the minds of the children.

There is some testimony to the effect that upon the children's arrival in Austin the clothes they were wearing and those they brought with them were not adequate for their needs. Appellant stated she had been unable to attend to the clothes because of her condition, that she so informed appellee and told him that everything the children had was dirty, that she was unable to wash them all and that appellee said "That is all right. Put them on the bus and I will take care of that when they get here; let them wear what they have on their backs." Appellee said he thought they had more clothes than they brought with them and this fact appears to be borne out by other testimony.

We attach no great importance to this testimony. It would be measuring the standard of proper clothes in Florida as against proper clothes in Texas. Wesley said they had all the clothes they needed in Florida although when asked additional questions he limited his statement largely to his own needs. After all the children were being sent to appellee under what was believed to be a temporary arrangement and it could reasonably be expected that the father would supply needed clothes.

Appellant testified that she had had operations on her teeth and gums and that she had recovered her health. There is no evidence to dispute her evidence in this respect. She further testified that she came to Austin because she could not stand being away from her children and that she had intended to get them at the end of the school semester. That the Principal at Wesley's school advised her to change the children at the end of the semester; that she didn't know there was any doubt about her taking them; that she intended to settle where it was for the best interest of the children and that she consulted lawyers because she wanted to get something certain "in black and white * * * so at last I could take the children and we could go ahead and assume our lives without any more interruptions." She testified that she had secured employment and had made arrangements for living quarters for herself and the children; that such place was a suitable place located on a bus line that

would carry the children to and from the schools they are now attending.

This home as described is: located on a one-acre tract of land in South Austin, four bedrooms, large living room, a patio, screened porch, large kitchen, deep freeze, refrigerator, stove and sink. It is located on a bus line and is occupied by only one person, Miss Quante.

Appellee's home is located in South Austin, it is a five room house with two bed rooms. Appellee maintains his office in the home and uses the living room as a reception room during office hours. The family consists of appellee, his wife and, since September, 1953, the three minors.

Appellant is a graduate of the same chiropractic college as appellee. She testified she is not now licensed to practice in Texas but expressed her intention to secure such license and to then practice that profession. In the past she has done stenographic and clerical work. One of her former employers, a State senator, testified that she was energetic, capable and a faithful employee. There is testimony that appellant has held responsible positions most of her adult life and that she is capable of holding such positions. She is forty-three years of age, a high school graduate, has attended the University of Texas one year, is a graduate of a business college, and as already noted is a graduate of a chiropractic college.

At the time of the trial appellant was employed, had made arrangements for a home for herself and the children which home had accommodations and conveniences suitable for their needs. She also said that the hours of her employment would permit her to be at home while the children were there after school.

Appellee testified that he knew the cost of feeding and clothing the children, sending them to school and keeping them respectable and that he was doing that on $120 per month.

Appellee's home appears to be suitable for the children, and also the home arranged for by appellant appears to be suitable.

The educational opportunities offered the children by the parties are the same, and the living conditions of the home arranged for by appellant is not so different from appellee's home that it can be said that the best interest of the minors require that their custody be changed. There seems to be no evidence to dispute these facts. There is evidence that the best interest of the children would be served by placing their custody with the mother. This evidence is disputed by one witness who said on cross examination that she thought the children would be better cared for in appellee's home however she said she knew nothing about how the children were cared for by appellant. Other witnesses testified that appellee's home was a proper place for the children.

■ What we have said shows a change of the conditions of the parties and of the children, however a mere change of conditions is not sufficient. Leonard v. Leonard, Tex.Civ.App., 218 S.W.2d 296. Such changed conditions must be such as affect the welfare and best interest of the minors and require that the original decree awarding their custody be changed. Pearson v. Pearson, supra.

■ It is our opinion that appellee failed to discharge the burden resting on him to show that since the original decree conditions have so changed as to require that the custody of the minors as then adjudicated be changed. Authorities, supra.

The judgment of the trial court, insofar as it awarded custody of the minor children to appellee, is reversed and judgment is here rendered awarding the custody of said minors to appellant subject to a reasonable right of visitation by appellee. In all other respects the judgment of the trial court is affirmed.

Reversed and rendered in part and in part affirmed.

### On Motion for Rehearing.

In his motion for rehearing appellee complains of our original opinion and says that in any event we should reverse and remand

this cause rather than reverse and render judgment.

In Leonard v. Leonard, Tex.Civ.App., 218 S.W.2d 296, 301 (cited in our original opinion) the Court said:

"Material change of conditions which will require a modification of a decree as to the custody of a child is ordinarily such as (1) Marriage of one of the parties. (2) Poisoning of the mind of the child by one of the parties. (3) One of the parties becoming an improper person for the custody. (4) Change in the home surroundings. (5) One of the parties becoming mean to the child, or some other similar material change of conditions."

The only evidence of changed conditions of the parties and of the minors since the former decree shows (1) and (4) supra. However these changed conditions are not sufficient but the evidence must further show that changed conditions affect the welfare and best interest of the minors and require that the original decree be changed to serve such welfare and best interest. Our original opinion demonstrates that it was our opinion that there is no evidence to support this necessary issue. We remain of that opinion.

 Appellant's first point presented the issue of no evidence to support the trial court's judgment, and we having so found it becomes our duty to render judgment. 3–B Tex.Jur. pp. 584–594.

The record shows that the cause has been fully developed. The parties were afforded a full hearing and were allowed to introduce all the evidence they desired. To remand the cause for another trial would leave the custody of the minors undetermined, would subject them to the experience of again hearing the past lives of their parents and themselves reviewed in court, and could not serve their welfare and best interest but, in our opinion, considering the ages of the minors, another trial would only tend to alienate their affections for the one or the other of their parents.

Frequent hearings as to custody of minors are to be frowned upon and not encouraged by the courts. Pearson v. Pearson, Tex.Civ.App., 195 S.W.2d 188.

As appears from that portion of the trial court's judgment quoted in our original opinion the issue of changed conditions affecting the best interest of the minors since the Florida decree was tried but there is no evidence to support a finding of such changed conditions. The trial court abused his discretion in changing the custody of the minors from the mother to the father. Nichols v. Nichols, Tex.Civ. App., 247 S.W.2d 143, error ref. n.r.e.

The motion for rehearing is overruled.

Motion overruled.