**Eddie DOHERTY, Appellant,**

v.

**Helen DOHERTY, Appellee.**

**No. 10311.**

Court of Civil Appeals of Texas.

Austin.

April 27, 1955.

Rehearing Denied May 25, 1955.

John C. Marburger, La Grange, for appellant.

Massey, Hodges, Moore & Gates, Columbus, V. F. Taylor, Austin, for appellee.

GRAY, Justice.

This is a child custody case and is an appeal from a judgment modifying a judgment of the district court of the 8th Judicial District of Montana.

On November 15, 1951, the district court of Fayette County granted appellee a divorce from appellant and awarded her the custody of their minor son, Steve Daryl Doherty, who was born January 30, 1948.

That judgment gave appellant the right of reasonable visitation with the minor.

Appellant is a Captain in the United States Air Force, and at the time of this trial was stationed at Great Falls, Montana. He had remarried, had a young son and maintained a home at Great Falls.

It appears from appellee's evidence that after November 15, 1951, appellant was about to depart for foreign service and that she carried the minor to California for a visit with appellant. It does not appear what the arrangement as to the custody of the minor at that time was but it does appear that he remained with appellant for about two years a part of which time was spent in Germany. It also appears that a judgment was obtained in the district court of the 1st Judicial District of Montana on November 29, 1951, granting appellant a divorce. It does not appear what disposition of the custody of the minor was made by that decree.

On June 11, 1954, upon the agreement of the parties "with the intent in mind and for the purpose of finally settling and determining the legal proceedings, actions and questions of jurisdiction with regard to the care, custody, support, maintenance and control of said minor child, and of amicably determining between themselves, subject to the approval of the above-entitled Court, the question of the care, custody, control, support and maintenance of said child," the Fayette County judgment of November 15, 1951, and the judgment of the district court of the 1st Judicial District of Montana were modified by the district court of the 8th Judicial District of Montana. This judgment in part provided:

"3. That the parties hereby agree that the custody of the said Steve Daryl Doherty shall be alternated so that:

"Helen R. Doherty shall have the custody for the summer school vacation period of 1954 and 1955, and Eddie Doherty shall have the custody during the regular school years of 1954–1955 and 1955–1956, and that thereafter Eddie Doherty shall have the custody

of said child during the next two annual summer school vacations and Helen R. Doherty shall have the custody for the next two regular school years, and thereafter Helen Doherty shall have the custody for the next two annual school summer vacations and Eddie Doherty the next two regular school years, and so alternating every two years until as hereinafter provided.

"It is agreed that the school vacation period for the year 1954 begins on June 14, 1954, and ends September 1, 1954, and that the school terms for the years thereafter commence September 1st of each year and end on the date that the school terms ends in June of each year.

"4. It is understood and agreed that when the said Steve Daryl Doherty reaches the age that he can express an intelligent preference with regard to his custody, that he shall have the right to express said preference and the parties hereto will abide by that preference, and that the parties hereto will refrain from attempting to influence said child in the election of his preference and will refrain from making derogatory remarks about the other party to said child, but will teach said child to have love, affection, respect and obedience toward the other party."

At the time the above agreement was entered into appellee was personally present and she and her attorneys, Honorable Ralph J. Anderson, a Montana attorney, and Honorable C. C. Jopling, an attorney of Fayette County who accompanied appellee and others to Montana, all signed the agreement.

On June 13, 1954, the minor was delivered into the custody of appellee in Montana and was brought to Fayette County.

Appellee has not remarried and she and the minor reside at the home of her parents in Fayette County.

Prior to September 1, 1954, appellant came to Fayette County to receive custody of the minor pursuant to the Montana decree. He was not permitted to see the minor and filed a habeas corpus proceeding. On August 28, 1954, appellee filed her suit seeking to modify the Montana decree. The two causes were consolidated and on October 13, 1954, at a nonjury trial, a judgment was rendered awarding full custody of the minor to appellee and giving appellant reasonable rights of visitation with the minor but providing:

"* * * such rights of visitation to be exercised by said Eddie Doherty at the home of such minor child in Fayette County, Texas."

The decree permanently enjoined appellant from taking the custody of the minor from appellee or in any manner interfering with her custody.

At appellant's request findings of fact and conclusions of law were filed. Among others, the trial court found:

"7. The actual custody of the minor child was obtained by Helen Doherty on or about June 13, 1954, the child being delivered into her possession in the State of Montana, and the child is now living and being cared for by his mother, Helen Doherty, at their home in Fayette County. When the minor child was delivered into the possession of Helen Doherty in Montana, he was underweight, in ill health and in poor physical condition and was anemic and highly nervous. Since the child has been under the custody, care and control of his mother, Helen Doherty, he has received needed medical attention and regained weight until he is now of normal weight and is attaining a good and healthy physical condition under his mother's care, which he did not have while under the care of the defendant and petitioner, Eddie Doherty. Prior to and at the time such child was returned to the possession of Helen Doherty, he was highly nervous and had a tendency to be unruly and unmanageable in his social, moral and emotional attitudes. Since being under the care of his mother, Helen Doherty, the child is becoming a normal and healthy

boy, who is happy, satisfied and better mannered under the care of his mother. The undisputed medical evidence is that he is in the need of further and continued medical treatment and attention, which he is receiving, and that such medical attention and treatment can best be given, and with best results, while such child is under the care, attention and supervision of his natural mother, Helen Doherty. The Court finds that unless the minor child is allowed to remain with his mother, Helen Doherty, the health, character and personality of such child will be adversely affected during the early formative years of his life which he is now in, which will have a permanent undesirable effect upon his future well-being."

The trial court concluded that:

"2. The conditions governing the custody and welfare of said minor child, Steve Daryl Doherty, have materially changed subsequent to the entry of the decree on June 11, 1954, in the District Court of the State of Montana, in and for the County of Cascade, to such an extent that the welfare and best interest of said minor child require that his full custody, care and control be given and awarded to plaintiff and respondent, Helen Doherty, his mother.

"3. It is to the best interest of the minor child and to his future welfare that his care, custody, control and possession should remain where it has been since June 13, 1954, and he is entitled to the benefits of the home and environment which will best promote the interest of said minor, and it would be against the best interest of said child to disrupt and change the environment, in the custody of his mother, in which he is now situated."

Upon appellant's request for further findings the trial court found:

"I find that there has been no change of conditions, situations and character

of the father, Eddie Doherty, that would in any way adversely affect the best interest of his son, Steve Daryl Doherty, a minor, since the entry of the Judgment entered by the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, on the 11th day of June, 1954. * * * with the qualification that the evidence shows that the father may be called anytime for overseas duty even in foreign lands."

Appellant explained the physical condition of the minor on June 13, 1954, by saying that he was then recovering from an attack of the measles. The doctor under whose care the minor had been since his return to Fayette County testified at the trial. He gave testimony as to the minor's physical condition, his nervous condition during that time and also as to his improvement. He said the minor's physical condition could have resulted from measles, or from drugs given, or from various other causes, but did not express his opinion as to the exact cause, He also said that when he first saw the minor he was irritable and restless, and that at the time of the trial he seemed to be calmer and more in control of his nervous energy and reactions than when he first saw him. He said that the eating habits of the minor could have had something to do with his condition and with his improvement and said that changing the minor's residence from one State to another must be considered as a factor. He also said that at the time he first saw the minor that:

" * * * from the study of our examination, it showed that there was no active infection present at that time. He did not need any additional therapy except what we gave him. We did a complete blood study to rule out any infection at that time; the kidneys were studied and the blood study was made, and the only thing we did find was a decrease of the red blood cells and a decrease of the amount of iron in the blood stream.".

and he further said:

"A. Assuming that he had measles, it is logical for any individual—certain infections—for the appetite, for them to regain the weight they have lost if there are no residual things to prevent that."

Appellee testified that on June 13, 1954, the minor was underweight, was nervous and irritable and that since that time he had gained weight, was more calm, ate better and was contented.

It appears certain from the above quoted finding of the trial court that he considered the evidence as to the minor's physical condition and his nervousness on June 13, 1954, and his general improvement since that time and concluded that the best interest of the minor requires that his full custody be awarded to appellee.

In Amend v. Amend, 268 S.W.2d 206, 210, this Court said:

"If the original decree is to be modified or changed it is necessary that the evidence show that since that decree conditions have so changed as to require a new decree depriving appellant of the custody of the minors. Martin v. Martin, Tex.Civ.App., 132 S.W.2d 426; Pearson v. Pearson, Tex.Civ.App., 195 S.W.2d 188; Roberts v. Tippett, Tex.Civ.App., 239 S.W.2d 859. That is to say the evidence must show that since the original decree conditions have so changed that it can reasonably be said that it would be injurious to the welfare of the minors to leave their custody as originally adjudicated. Neal v. Medcalf, Tex.Civ.App., 244 S.W.2d 666."

The physical condition of the minor on June 11 was a matter before the parties at the time the above agreement was entered into, and it was before the Montana Court at the time that agreement was approved.

The Montana court necessarily found that both appellant and appellee were fit and proper persons to have the custody of the minor. The trial court's finding that since June 11, 1954, the conditions, situation and character of appellant have not changed to in any way affect the best interests of the minor is a finding that appellant still is a fit and proper person to have custody of the minor. The qualification of this finding that appellant may be called at any time for overseas duty does not alter our opinion. This was a matter before the Montana court and there is no evidence that appellant is more likely to be called for such service now than he was on June 11, 1954.

There is evidence that appellant and the minor are strongly attached to each other and no evidence to the contrary. Certainly by these conditions and the above finding the minor's best interest will be served by permitting him to know and to associate with his father. In no other way can a fit and proper father discharge his duties and obligations to his son nor can the son learn to know his father and enjoy the relations of father and son.

The record shows that appellee refused to let appellant see or visit the minor prior to the judgment and that she refused to let him talk to the minor at the courthouse during the trial. She testified that she had not started the minor to school, even though he was of school age, because:

"A. I couldn't put him in school due to all this trouble with the court action, I was afraid his father would pick him up."

Appellee was asked why the minor was not permitted to visit with appellant at the courthouse during the trial of this cause and said that prior to June 13, 1954, the minor had been with appellant for about two years, that while at the courthouse she did not let him speak to appellant because "it makes the baby nervous" and testified:

"Q. Don't you think maybe you should try to see if his nerves would be calmer if he had a chance to talk to his father? A. No.

"Q. You did not try it? A. No.

"Q. You had him by the arm and took him away from his father and never let him— A. I was holding the baby's hand.

"Q. And you took him in the opposite direction? A. We were headed in the opposite direction."

The evidence suggests, if it does not conclusively show, that appellee's action was prompted by her personal attitude toward appellant rather than by the welfare and best interest of the minor and that her attitude is adverse to such welfare and best interest. It appears that here, as is too often the case where parents reach a parting of their ways, that their attitude and conduct toward their child or children is influenced and governed by their personal ill will and dislikes to the prejudice of their duty and obligation to serve the welfare and best interest of their child or children.

This evidence shows a change in the attitude of appellee since June 11 and is evidence of her preventing the association of the minor with his father whom the trial court found to be a fit and proper person.

 There is no evidence that since June 11, 1954, there has been any material change of conditions which require that the Montana decree be modified. The only evidence on this issue relates to the physical condition of the minor which we have already noticed.

That condition as explained by appellant's uncontroverted evidence and the doctor's statement that the exact cause of such condition could not be pinpointed does not show a changed condition arising since June 11, and it does not tend to show that the provisions of the Montana decree are adverse to the minor's health and weight.

A decree awarding the custody of a minor, or minors, may be modified at a subsequent proceeding but such modification must be upon allegations and proof of conditions arising since the decree sought to be modified. Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946, 75 S.W. 368. The original decree being res adjudicata of all questions

concerning such custody which could have been, or were, raised at the original proceeding. Oldham v. Oldham, Tex.Civ.App., 135 S.W.2d 564, Er. ref.; Evans v. Taylor, Tex.Civ.App., 128 S.W.2d 77. In both of these cases foreign decrees in child custody cases are recognized as binding on the parties and protected by the full faith and credit clause of the Federal Constitution.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing by her suit, and that the custody of the minor, Steve Daryl Doherty, be and the same is awarded to appellant in accordance with the judgment of the district court of the 8th Judicial District of Montana dated June 11, 1954, and which custody shall be exercised by the parties in accordance with that decree.