Maurine E. CARTER, a feme sole,
Appellant,

v.

Robert J. CARTER, Appellee.

No. 13416.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 26, 1958.

Baskin, Casseb & Casseb, John M. Gilliland, San Antonio, for appellant.

Brown, Brown & Daniels, San Antonio, for appellee.

BARROW, Justice.

This is a child custody case brought by appellee, the father, against appellant, the mother. At the time this suit was brought,

custody of the subject child, Robert Jennings Carter, Jr., was vested in the mother, except for the fourth week-end in each month when custody was vested in the father. This custody arrangement was by virtue of a judgment of the District Court of Caldwell County, Texas, divorcing these parties, dividing their property, and providing for the custody and support of their minor son, Robert Jennings Carter, Jr.

Appellee's present suit did not seek complete custody of his son, but sought to further divide it, so that appellee, in addition to the fourth weekend in each month, would also have custody of the child during the three summer months and for periods at Christmas, Thanksgiving and Easter.

Trial was before the court, and at the conclusion thereof judgment was rendered further dividing custody, as follows: Appellee would have custody of the child every fourth week-end of each month; also from June 13 to June 30; July 13 to July 31; August 13 to August 31; December 27 to December 31, of each year, and Friday through Sunday of Easter week-end of every odd year commencing in 1959. Presumably, appellant would have custody of the child at all other times.

Appellant and appellee were married June 24, 1950. Robert Jennings Carter, Jr., was born March 31, 1951. The child will hereafter be referred to as "Sonny" as he is called by the parties. Appellee sued appellant for a divorce in Caldwell County, Texas, which divorce was granted by judgment signed March 21, 1955, at which time Sonny was four years old. Appellant was awarded full custody of Sonny except for the fourth week-end of each month, when appellee was given what was termed "possession and custody" of the child.

On August 16, 1956, appellee married his present wife, Star Lytle Carter, and has had two children by her: Arthur Wilson Carter, born April 20, 1957, and Thomas Frederick Carter, born March 15, 1958. Appellee's present wife had a child by a former marriage, named Star Lee Metzger, which child has been adopted by appellee.

Appellee filed this suit on March 22, 1957, but the trial of the case was not begun until April 20, 1958. The changed conditions alleged and relied on by appellee as grounds for a change in the original judgment are, that he re-married and has purchased a home; that two boys were born to him and his second wife, and he has adopted the twelve-year-old daughter of his wife, during the pendency of this suit.

The record shows that appellant owns her own home and earns a salary of $5,200 per annum; that she and Sonny live alone in that home, and that it is a new house costing $11,500. Appellant owes some $4,000.-00 on her home, but she is well able to meet the payments. It is not disputed that the child is well cared for in every way, including his education and spiritual welfare; that he is healthy, happy and intelligent, and has a normal boy's life. The record shows that while the relationship between Sonny's parents is not entirely pleasant, the provisions of the divorce decree concerning the monthly visits to the father's home have been lived up to by both parents, and there has been no difficulty on or concerning these occasions, except that appellee and his wife testified that on leaving his mother's home and on leaving his father's home for the return, it would take a few minutes for Sonny to adjust himself. There is no evidence that either party has in any way attempted to poison the mind of the child against the other party, but, on the contrary, Sonny loves both of his parents. Appellee's home in Luling, Texas, is a three-bedroom home, in which he and his wife and three children live permanently, but at the time of the trial his wife's father was staying with them on an extended visit, the duration of which is uncertain, and when Sonny is visiting with his father it is necessary for the girl and the boy, Arthur, and Sonny to sleep in one bedroom. Appellee's wife testified that they were crowded in the home, but that they contemplated extending the home as they got able. Appellee's financial status was

gone into quite fully during the trial. No good purpose would be served by an extended discussion thereon, but appellee's own testimony shows his expenses exceed his income, and that in 1957 he had to borrow $1,000 "to meet his current bills." The record further shows that the major portion of his income is from property given to him by his father.

▪ There is nothing in the record to indicate that either the mother or the father is not a fit and proper person to have the custody of the child. It has long been the settled law of this State that the decision of a child custody case is a matter primarily within the sound discretion of the trial court. However, this is not an unbridled discretion, it is subject to review by the appellate court upon the facts shown to exist. Moreover, there are certain rules of law governing such matters that must be followed in determining the facts.

▪▪ The judgment of the court in the divorce suit awarding custody of the child to the mother, with visiting rights to the father, is res judicata as to all conditions and circumstances existing at the time, 15 Tex.Jur. 678, § 171, and in order to justify a modification or change of custody once established by judgment it is necessary that there be a change of conditions and circumstances. Moreover, conditions and circumstances must not only have changed, but such changed conditions must be such as to affect the welfare and best interest of the child and to require that the original decree awarding custody be changed. Amend v. Amend, Tex.Civ.App., 268 S.W.2d 206; Neal v. Medcalf, Tex.Civ.App., 244 S.W.2d 666; Roberts v. Tippett, Tex.Civ.App., 239 S.W.2d 859; Korn v. Stein, Tex.Civ.App., 225 S.W.2d 244; Leonard v. Leonard, Tex. Civ.App., 218 S.W.2d 296; Pearson v. Pearson, Tex.Civ.App., 195 S.W.2d 188; Wrather v. Wrather, Tex.Civ.App., 154 S.W.2d 955; Martin v. Martin, Tex.Civ.App., 132 S.W.2d 426. Furthermore, we are of the opinion that the facts must demonstrate that the new arrangement will enure to the betterment of the child in question. Authorities supra.

▪ In this case the evidence shows that the mother's willingness and ability to care for the child has not changed for the worse, but has definitely improved. The only change in the father's status is that he has married, has a family, and has bought a home. While the father's desire to see more of his son is natural and commendable, the controlling question is the best interest of the child. We are of the opinion, under these unfortunate circumstances, that the trial court's judgment dividing custody during the summer months so as to require the child to change homes six times during a two and one-half months' period, from June 13 to August 31, each year, is not in the best interest of the minor child, and would be decidedly inimical to his welfare. That arrangement would undoubtedly create an atmosphere of uncertainty and instability under which the child would be required to live.

Our Courts have, consistently and for sound and cogent reasons, condemned divided custody of children. As said by Justice Stokes in Immel v. Immel, Tex.Civ. App., 231 S.W.2d 732, 733:

"It might be that conditions of parents and children could be revealed in which the only solution of the problem would be to divide the custody of children between them or between one of them and other parties but such a condition is difficult to conceive and certainly this case does not reveal such a necessity."

On the matter of divided custody, Chief Justice Alexander in the often cited case of Martin v. Martin, Tex.Civ.App., 132 S.W.2d 426, 428, said:

"In our opinion, the original decree awarding the child part time to each of the parents was unwise. Certainly, no child could grow up normally when it is hawked about from one parent to the other with the embarrassing scene of

changing homes at least twice each year. Such decrees are usually prompted by a laudable desire to avoid injuring the feelings of the parents, but the net result is a permanent injury to the child without any substantial benefit to the parents. In addition to the lack of stability in his surroundings, the child is constantly reminded that he is the center of a parental quarrel. It is readily apparent that such practices are calculated to arouse serious emotional conflicts in the mind of the child and are are not conducive to good citizenship. Moreover, the parents are continuously pitted against each other in the unenviable contest of undermining the child's love for the other parent. Each parent is afraid to exercise any sort of discipline for fear of losing out in the contest. As a result, the child is reared without parental control. Such decrees by which the child is awarded part time to each of the parents have been condemned by numerous decisions. 19 C.J. p. 344, sec. 797, and authorities cited in Note 27; Swift v. Swift, Tex.Civ.App., 37 S.W.2d 241."

The record in the instant case shows that the trial judge was deeply concerned over the welfare of this child as well as the rights and feelings of the parents, and no doubt did what he thought was best for the child, but, in our opinion, appellee wholly failed to discharge his burden to prove a change of circumstances which would justify so drastic an order as was made, requiring the child to be bounced back and forth, from parent to parent and from home to home, six times during each summer. We consider this the worst form of divided custody.

We think it would be unwise to change from a custodial arrangement which the evidence shows was working as well as could be expected, to one which would disrupt the normal life of the child. We find no objection to the allowance of the two additional visits to the father from December 27 to December 31 of each year, and from Friday through Easter Sunday in every odd year,

and that part of the judgment of the trial court is affirmed. That part of the judgment continuing the monthly visits as provided for in the original divorce judgment is also affirmed. Otherwise the judgment is reversed and here rendered that appellee take nothing and that full and complete custody of Robert Jennings Carter, Jr., be awarded to appellant, subject to appellee's right of visitations as above provided.

All costs are taxed against appellee, Robert J. Carter.