479 S.W.2d 90 (1972)
Shirley May Rice PONDER et vir, Appellants,
v.
Stanley Boyd RICE, Jr., et ux., Appellees.
No. 17829.
Court of Civil Appeals of Texas, Dallas.
March 23, 1972.
Rehearing Denied April 13, 1972.
Harold F. Curtis, Jr., Curtis & Fugitt, Greenville, for appellants.
G. C. Harris, Greenville, for appellees.
CLAUDE WILLIAMS, Chief Justice.
This is a child custody action. Shirley May Rice Ponder, joined by her present husband James E. Ponder, brought this suit in the District Court of Hunt County, Texas seeking a decree awarding her custody and control of Stanley Boyd Rice, III, age ten. She alleges that in the original decree granting divorce from her former husband Stanley Boyd Rice, Jr., the Domestic Relations Court of Dallas County, Texas awarded her the permanent care, custody and control of two minor female children, but ordered that the permanent care, custody and control of Stanley Boyd Rice, III, be awarded Stanley Boyd Rice, Jr., with reasonable rights of visitation reserved to Shirley May Rice. She alleged that there had been changes of conditions subsequent *91 to the original divorce decree which justified the change in custody which she sought.
Trial was had to the court, without a jury, and after hearing a great volume of evidence presented by both parties, the trial court rendered judgment as follows:
"The Court, after hearing and considering the pleadings and all the evidence adduced by either party, is of the opinion and finds, and it is so ordered that the custody of the minor child, STANLEY BOYD RICE, III, be granted and awarded to Plaintiff, SHIRLEY MAY RICE PONDER, and Defendant, STANLEY BOYD RICE, JR., as follows:"
The decree then, in seven detailed paragraphs, spells out the various times and places when the mother may have custody of the child and when the father may have custody. It was decreed that the child shall be with the mother for the period beginning August 5, 1971 at 10:00 a. m. and ending August 21, 1971 at 4:00 p. m., at which time the child would be placed on a non-stop bus from Houston, Texas to Dallas, Texas, where he would be met by his father. It was then provided that the child shall be with his father during the school months and until the end of the school months beginning in 1971 and ending in 1972. During these months the mother shall have the child with her the first weekend in October, 1971 beginning on Friday at 4:00 p. m., and ending the following Sunday at 4:00 p. m., said child being sent from Dallas, Texas to Houston, Texas on a non-stop bus. It is then provided that the mother shall have the child with her on the first weekend of each month thereafter during the school months when said child is with the father, each visit being accomplished by non-stop bus between Dallas and Houston and the return being made in the same manner. The decree then provides that on the third weekend of each month during school months when the child is with his father, the mother shall have the right to have said child with her in Dallas from 1:00 p. m. on Saturday until 6:00 p. m. on Sunday. Next, the child shall be with his mother at the end of the school months in 1972 and during the summer months of 1972. Finally, during the summer months when the child is with the mother the father shall have the child with him the fourth weekend of each of the months of June and July of 1972 beginning on Friday at 2:00 p. m. and ending the following Sunday at 2:00 p. m. and at the beginning of such period the mother shall deliver the child to the father or place said child on a non-stop bus from Houston to Dallas. At the end of such visitation period the father will deliver the child to the mother's residence at Houston or place the child on a non-stop bus from Dallas to Houston.
From this decree the mother Shirley May Rice Ponder, and her present husband James E. Ponder, bring this appeal.
In their first point on appeal appellants complain of the action of the trial court in conducting a conference with the minor child in his chambers and out of the presence of the parties or their attorneys. The record reveals that during the presentation of evidence neither party called the minor child as a witness. At the conclusion of the testimony, and after both sides had rested and closed, the court announced to the parties and the attorneys that it was his intention to talk to the minor child in his chambers, outside the presence of any of the parties or their attorneys and without the court reporter being present. The court directed the boy's father to bring the child into the courtroom. At this point counsel for appellants asked that the court instruct the court bailiff to accompany the father, which was done. When the child was brought back to the courthouse the judge proceeded to talk with him in his office and outside the presence of the parties or their attorneys. Following this the judge returned to the courtroom, reconvened the proceedings and announced his decision.
*92 Appellants contend that reversible error is reflected in the action of the trial court in this regard and rely upon the decisions of this court in Dean v. Cone et ux., 270 S.W.2d 242 (Tex.Civ.App., Dallas 1954, no writ) and Baker et vir v. Vidal, 363 S.W. 2d 158 (Tex.Civ.App., Beaumont 1962, writ ref'd n. r. e.). In Dean, supra, we held that the action of the trial court in interviewing the child whose custody was under consideration, over specific objection of the attorneys, constituted reversible error. That opinion is not controlling here since the record affirmatively shows that no objection was voiced by appellants' counsel prior to the time the court interviewed the child in his chambers. In fact appellants' counsel impliedly acquiesced in the court's action by requesting that the court bailiff accompany the child's father in bringing him into the courtroom. In Baker, the court acknowledged the rule in Dean, but held that the error, if any, did not constitute reversible error.
While wide discretion has been universally granted trial judges in the judicial determination of custody of minor children, yet a serious problem has arisen from the practice of trial judges in conducting personal interviews with the minor child or children in question without giving opportunity to the parties, or their attorneys, to either be present or subject the child to cross-examination. The problem is classically demonstrated in an excellent annotation in 99 A.L.R.2d 954, 955 wherein it is stated:
"Solomon, the wisest of men, had to decide between two women as to the custody of a child and was able to do so by offering each half. The ancient king's alternative not being available to modern courts in their efforts to decide wisely the custody of infants as between competing parties, the most that can be done is to attempt to ascertain the best interests and welfare of the child. But as state in Rea v. Rea (1952), 195 Or. 252, 245 P.2d 884, 35 A.L.R.2d 612, infar § 7, the procedure for doing so invariably presents a striking clash of two competing social interests which must be resolved in each custody case. On the one side there is the fundamental principle of Anglo-Saxon law that the decision must be based on evidence produced in open court lest the guaranty of due process be infringed, while on the other there is the conviction of those trained in the social and medical sciences that the informal procedure of obtaining the infant's preference, outlook, and interest in the calm of the judge's chambers, away from the pressure of the parents, provides best for the welfare of the child and of society as a whole.
"The conflict, as far as the legal field is concerned, has resulted in some degree of compromise."
The annotation then announces the general rule that when a private interview is held pursuant to the consent of the parties, either in fact or in law, any claimed error is waived and the interview cannot be used as the basis for subsequently attacking the custody award. A number of cases from various jurisdictions throughout the United States are cited in support of this rule.
In the case of Williams v. Guynes, 97 S.W.2d 988 (Tex.Civ.App., El Paso 1936), a similar situation was presented to the court. There the trial court had announced his intention of conducting additional investigation concerning the child's welfare. The court, in approving this, especially where no objection was voiced, said:
"The habeas corpus proceedings had for their purpose the determination of the proper person to whom the custody of the minor child should be given. The proceedings are necessarily informal. It is the right and duty of the trial court to ascertain any and all the facts and to make such investigation of conditions which in his judgment will assist him in reaching a proper solution of the child's problems. Technical rules of practice are not to have controlling effect. The *93 controlling issue on the merits is which custodian is for the child's best interest. The pleading in such cases is considered of little importance, and the judge exercising the jurisdiction of a chancellor has broad equitable powers [Citing authorities]."
The court in Prendergast v. Prendergast, 122 S.W.2d 710 (Tex.Civ.App., Galveston 1938), approved the trial court's action in acquiring personal knowledge of the facts from personal investigation. See also Penn v. Abell, 173 S.W.2d 483 (Tex.Civ. App., El Paso 1943).
We believe that in the light of the record here presented, and in line with the authorities heretofore presented, the trial court did not abuse his discretion nor commit error by conducting the personal interview with the minor child whose custody was being decided. We are of the opinion and so hold that appellants waived any right to complain of such action by failing to object to the court's action prior to the time that the interview was conducted.
Appellants' first point of error is overruled.
In their second and third points of error appellants contend that the judgment rendered by the trial court was based upon insufficient evidence and was so against the weight and preponderance of the evidence as to amount to an abuse of discretion by the trial court. A careful review of the entire record in the light of the applicable rules of law governing judicial review of such cases convinces us that appellants' points must be sustained.
The evidence presented to the trial court, while voluminous, may be briefly summarized. Appellant Shirley May Rice Ponder and appellee Stanley Boyd Rice, Jr., were formerly married and as a result of such marriage were born three children, two girls and one boy. This marriage resulted in a divorce granted by the Domestic Relations Court of Dallas County, Texas. In that decree the court awarded custody of the two little girls to the mother and gave the father custody of the boy, Stanley Boyd Rice, III. Immediately after the divorce the mother was financially unable to take care of the two little girls and left the children in the care of the father temporarily. Subsequently, appellant Shirley May Rice Ponder remarried and she and her husband James E. Ponder have established a home at Stanford, Texas which is near Houston. The testimony reveals that this home is comfortable, clean and adequate and situated in a good neighborhood. Mr. Ponder is employed as an engineer and earns approximately $1,100 per month. There is no adverse testimony concerning the quality and character of the home in Stanford. The two little girls live with their mother and their stepfather in this home and are apparently happy and well cared for.
Appellee Stanley Boyd Rice, Jr. lived in Garland, Texas at the time of the divorce from his wife but he subsequently changed employment and moved to Hunt County, Texas. At the time of the trial he, and his new wife and baby, lived in a trailer house near Caddo Mills, Texas. Appellee's mother, age sixty-nine, with physical handicaps, is the principal person charged with the care of the minor child Stanley. There is considerable testimony concerning excessive consumption of alcoholic beverages on the part of appellee Stanley Rice. There is also evidence of physical abuse of one of the daughters by Stanley Rice as well as numerous unpleasant scenes between Stanley Rice and his former wife Shirley.
The testimony is conclusive that the boy Stanley suffers severe headaches and has been under the care of a physician who diagnosed his trouble as migraine headaches which are the result of a birth defect. The child's medical condition is classified as a minimal brain disfunction which will disappear without expensive medical treatment by the time he reaches the age of fifteen. One doctor who treated Stanley testified that the child's headache problems would be aggravated by emotional turbulence *94 such as being subjected to family disagreements. He testified that it would be to the child's best interest to be placed in a more stable environment where he could be with his siblings.
It is, of course, firmly established in our jurisprudence that broad discretion is vested in the trial court to determine the troublesome question of custody of children who are the product of a broken home. It is also fundamental that such discretion of the trial court should not be disturbed in the absence of a clear abuse of discretion. However, the first function of the trial court is to determine the best interest of the child. This rule has been followed consistently by Texas cases for many years as illustrated by the Supreme Court opinion in Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955).
Another rule of law which is deeply imbedded in our system of jurisprudence is one which condemns a decree of divided custody. Our courts have defined divided custody to mean both cases where the children of a marriage are divided between the parents as well as where the one child is divided between his parents. The rationale of the rule condemning the practice of dividing custody is most clearly set forth in the leading and most cited case of Martin v. Martin, 132 S.W.2d 426 (Tex.Civ.App., Waco 1939, no writ). Justice James P. Alexander (later Chief Justice of the Supreme Court of Texas) writing for the Waco Court of Civil Appeals used this language:
"In our opinion, the original decree awarding the child part time to each of the parents was unwise. Certainly, no child could grow up normally when it is hawked about from one parent to the other with the embarrassing scene of changing homes at least twice each year. Such decrees are usually prompted by a laudable desire to avoid injuring the feelings of the parents, but the net result is a permanent injury to the child without any substantial benefit to the parents. In addition to the lack of stability in his surroundings, the child is constantly reminded that he is the center of a parental quarrel. It is readily apparent that such practices are calculated to arouse serious emotional conflicts in the mind of the child and are not conducive to good citizenship. Moreover, the parents are continuously pitted against each other in the unenviable contest of undermining the child's love for the other parent. Each parent is afraid to exercise any sort of discipline for fear of losing out in the contest. As a result, the child is reared without parental control. Such decrees by which the child is awarded part time to each of the parents have been condemned by numerous decisions. 19 C.J. p. 344, sec. 797, and authorities cited in Note 27; Swift v. Swift, Tex. Civ.App., 37 S.W.2d 241."
Again in Dunn v. Dunn, 217 S.W.2d 124 (Tex.Civ.App., Amarillo 1949, writ dism'd), the court said that the division of custody results in continuous frustration, as well as destruction of environment.
In Carter v. Carter, 318 S.W.2d 471, 473 (Tex.Civ.App., San Antonio 1958, no writ), the court condemned divided custody especially where the parents were awarded alternate weekends thereby giving a change of custody some six times each summer and causing the child to be bounced from parent to parent and home to home.
Awarding the child to one parent during the school year and to the other parent during the summer is condemned in Martin, supra; Carter, supra; McGarraugh v. McGarraugh, 177 S.W.2d 296 (Tex.Civ. App., Amarillo 1944, writ dism'd); Immel v. Immel, 231 S.W.2d 732 (Tex.Civ.App., Amarillo 1950, no writ); Bronner v. Bronner, 278 S.W.2d 530 (Tex.Civ.App., Amarillo 1954, no writ); and Tedder v. Bloyd, 283 S.W.2d 409 (Tex.Civ.App., Amarillo 1955, no writ).
In Huffman v. Huffman, 408 S.W.2d 248 (Tex.Civ.App., Amarillo 1966, no *95 writ), the court said that a division of the custody of a minor child should never be done except under special conditions in which there is no reasonable alternative and it is made essential and absolutely necessary. See also Ex parte Simpkins, 468 S.W.2d 908 (Tex.Civ.App., Amarillo 1971); Lewis v. Cushing, 444 S.W.2d 815 (Tex.Civ.App., Beaumont 1969, no writ); De Gaish v. Marriott, 345 S.W.2d 585 (Tex.Civ.App., San Antonio 1961, no writ); and Tedder v. Bloyd, 283 S.W.2d 409 (Tex.Civ.App., Amarillo 1955, no writ).
Numerous factors militate against the idea of division of custody of the subject child between his father and mother as a result of the trial court's decree. Included in these factors are changes of discipline; changes of authority; sense of values; changes of habits and association with friends; changes of associations with activities in church, boy scouts, etc.; relationship with other children; stability of emotional life; change of climate; mental problems of the child; frequency of the shifting between the two homes; the permanency of the home, environment, associations, authority and security; and finally the fact that the child is constantly reminded that he is from a broken home, and that he is the subject of the parents' antagonisms and bitternesses toward each other.
An analysis of the decree reveals that under the court's present order of divided custody the child in question will be required to travel between his father's home in Hunt County and Houston, Texas, a distance of from 250 to 300 miles and this will require approximately twenty-four round trip bus trips each year, each trip requiring approximately four hours each way. This results in a total of approximately ninety hours per year actually on the bus between the two cities. Under the decree the mother will have custody of the child for 104 days per year at Houston, Texas and for 18 days per year in Dallas, Texas. The father will have custody of the child for 251 days per year in Hunt County.
It is our opinion that the undisputed facts in this record clearly do not demonstrate that it would be for the best interests of the minor child here involved to be subjected to the divided custody as awarded by the court. We think that the trial court's decree is clearly so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and an abuse of discretion.
The judgment of the trial court is reversed and remanded for further proceedings in accordance with this opinion.
Reversed and remanded.