Claudie A. HAM, Appellant,

v.

Ernest E. CAVETTE et ux., Appellees.

No. 13923.

Court of Civil Appeals of Texas.

Houston.

May 10, 1962.

Rehearing Denied May 31, 1962.

Tom S. Williams, Houston, for appellant.

Levy & Levy, Richard D. Davis, Galveston, for appellees.

WERLEIN, Justice.

This suit was brought by appellant against appellees to set aside an order of the District Court of Galveston County entered December 5, 1958 in Cause No. 90,-349 awarding temporary custody of appellant's children to appellees, Ernest E. Cavette and Elizabeth Cavette, the maternal step-grandfather and maternal grandmother of said minors, and to obtain full custody of such children.

Appellant asserts that the trial court abused his discretion and committed reversible error in awarding the custody, care and control of his minor children to appellees and not to him. In trying to determine whether there was an abuse of discretion by the trial court, we have carefully considered the entire record, which is quite voluminous. It would serve no useful purpose to set out more than a few salient facts.

Appellant and his first wife, Karlita, the daughter of Elizabeth Cavette, were married June 7, 1951 and divorced July 23, 1957. Custody of their two children; Kathy, who was born November 1, 1953, and Claudie Allin, Jr., who was born November 30, 1954, was awarded to Karlita. After the divorce Karlita married one Tom McKenzie. She died several months later, on March 17, 1958. Appellant married one Betty Carroll on October 6, 1957, and on April 3, 1958 appellant filed his original petition in said Cause No. 90,349 to obtain custody of said minors. On December 5, 1958 the District Court of Galveston County awarded temporary custody of the minors to the Cavettes. No further action was taken in that cause. On December 18, 1959 the present suit, Cause No. 93,721 in the District Court of Galveston County, was filed by appellant and on August 14, 1961 judgment was entered therein giving custody of the children to appellees.

Admittedly appellant, prior to being divorced by Karlita, lived at times a wild and dissolute life, associating with gamblers and prostitutes, entertaining in night clubs and beer joints in many places, and working only periodically without any steady employment for any length of time, except for several years as an entertainer at the Imperial Club in Galveston. Appellant admitted at the trial in June 1958 that he had been arrested on certain charges involving morals but had not been prosecuted or convicted. He admitted other derelictions and improper conduct but asserted that he was converted a week before such trial and his religion known as Jehovah's Witnesses would not permit him to return to the entertainment field, and that although he had previously believed what such sect taught, it was only a week before the trial that he had been immersed and had changed his manner of life. He didn't gamble, smoke or drink.

Appellant testified that during all the period after the children were born until the time he and his wife separated on May 4, 1957, the children spent approximately one-third of the time with the Cavettes. The children have remained in the custody of the Cavettes continuously from the time

their mother died in March, 1958 down to the present time.

The evidence shows that since March of 1958 appellees have been offered and given by appellant only $40.00 and a few articles of clothing towards the support of the children. At the time of the trial in June, 1958 appellant had been working for the Department of Agriculture, Soil Conservation, approximately two months and was making about $200.00 per month. Such employment would probably continue five or six months each year. He also did some commercial fishing and farming with his father. He testified that in the year 1958 he and his second wife earned approximately· $1,043.40 and in the year 1959 their combined earnings amounted to $1,954.95. He testified at the trial of the present case in September, 1960 that he was then making approximately the same weekly wage that he was making in June, 1958, and that he was still in debt approximately in the same amount of $1500.00 that he owed in 1958, and in addition he owed some $1,004.-50 to John Sealy Hospital. At the time of the trial of the instant suit he had a cottage with two bedrooms instead of one bedroom as in 1958. He paid $50.00 per month rent for such cottage and his average monthly food bill for himself and wife was about $30.00 per month. They ate vegetables from his father's farm.

The order of the court entered December 5, 1958 permitted appellant to visit the children in Galveston each Sunday from 1:30 p. m. to 6 p. m. While there is a conflict in the evidence, there is much testimony to the effect that when the children returned from such visits with their father, they were highly nervous and upset, had nightmares and frequently vomited. The testimony also indicates that the children did not want to go with their father and preferred staying home with the Cavettes. Mr. Cavette was making some $6,000.00 per year, ·and Mrs. Cavette was also earning money. They had a maid to look after the children when both were at work. The

children had been baptized in the Catholic church in accordance with the desire of their mother expressed shortly before her death, and at the time of the trial Kathy was in the first grade and Claudie in kindergarten at Sacred Heart School. The Cavettes denied that they were doing anything to alienate the affections of the children for their father, although Mrs. Cavette admitted that at one time she had told the children that their mother's death was caused from the treatment their father gave her.

The testimony of Mrs. Lockley, speaking for herself, and also for Mrs. Braud, both with the State Department of Public Welfare, was to the effect that the children were not ready for the gruesome explanations of life apparently expounded by their father during the times that he had them with him, and she recommended that the children be left with their grandmother, with the right of reasonable and controlled visitation by the father in the grandmother's home, at least until the end of the school term and then that they be permitted to spend the summer with their father with the grandmother having the right to see them. The court postponed entering final judgment until August 14, 1961, at which time he entered his order giving the custody of the children to appellees and giving appellant the right to visit the children the last Sunday of each month from 1:30 p. m. to 6 p. m. in Galveston, with the exception of August, and to have the children for a two weeks period with him at his home in Bay City, lasting from the first Sunday in August of each year to and including the third Sunday in August of each year.

■ There is much testimony to the effect that the Cavettes are suitable and proper persons to have custody of the children, that they are financially capable of taking care of them and rearing them in a proper manner, and that their home is a suitable one in which to rear such children. There is also much testimony to the ef-

fect that the visitations of the children with their father resulted in their becoming highly nervous and manifesting ill effects, and that the father possessed no financial security more than he had at the time of the trial in June, 1958. The testimony is conflicting in many respects but there is ample testimony to support the court's judgment in which he found that "Conditions surrounding the parties have not so materially altered or changed so as to require a change of custody." The trial court also found and decreed, "It is in the best interest of said minors that their care, custody and control be continued and vested in Defendants and not vested in Plaintiff."

It is appellant's contention that since the court did not expressly find that appellant was an unfit person to have the custody and control of said children, he is entitled to their custody as a matter of law since he is their father and natural guardian. Appellant relies on cases such as Binion v. Mathis, Tex.Civ.App., 171 S.W.2d 512; State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, and Castro v. Castellanos, Tex.Com.App., 294 S.W. 525, holding that there is a presumption that the best interest of the child will be subserved by permitting the surviving parent to have custody of such child.

In Taylor v. Taylor, Tex.Civ.App., 42 S.W.2d 455, the court, through Justice Alexander, stated:

"The presumption is that the best interest of the children will be subserved by awarding them to the natural parent, but this is a rebuttable presumption, and it is not necessary that the respondents prove that the natural parent is disqualified by immorality or misfortune. Dunn v. Jackson (Tex. Com.App.), 231 S.W. 351."

Since no express findings and conclusions of law were filed by the court, we are required to review the evidence in the light most favorable to appellees, the prevailing parties. Silva v. Aranda, Tex.Civ.App., 223 S.W.2d 332. In so doing we have concluded that there is in the record evidence sufficient to rebut such presumption and to support the court's findings expressed in his decree that it is in the best interest of said minors that their custody be continued and vested in appellees and not in appellant. The following statement in the opinion of Justice Norvell in Silva v. Aranda, supra, is applicable to the instant case:

"The record discloses that the credibility of witnesses was involved and the statement made by Chief Justice Pitts of the Amarillo Court of Civil Appeals in Thompson v. Haney, 191 S.W.2d 491, 493, is applicable here, viz.: 'Under our system * * * the question of a minor child's custody in such cases is addressed to the sound discretion of the trial court, who faces the parties and the witnesses, observes their demeanors and personalities, and feels the forces, powers and influences that cannot be discerned by merely reading the record. He is therefore in a better position to analyze the facts, weigh the virtues of the parties, and determine what will be for the best interests of the minor child. We must assume from the record in this case that the trial judge was endeavoring under the well-established rules of law to award the child to the person best fitted to care for it. It is a well-established rule of law that the judgment of the trial court in such a case will not be disturbed on appeal unless the award is so contrary to the great preponderance of the evidence as to show an abuse of discretion.' "

See Valentine v. Valentine, Tex.Civ.App. 1947, 203 S.W.2d 693, 696, where it is stated: "The trial court must look, in the light of all the circumstances, to the best interest of the child."

The present case was brought to change the custody of the children from appellees to appellant. Under the order of the

court, entered in Cause No. 90,349, giving temporary custody of the children to the maternal grandmother and maternal step-grandfather, the children have continued in the custody of appellees and have spent most of their lives in such custody. Prior to their mother's death they had spent approximately one-third of their time with appellees. During such time and the following years strong bonds of affection have existed and still exist between them and appellees, and a relationship has been established to which their lives have been adjusted. It is apparent from the record that the trial court gave the case very conscientious and careful consideration in arriving at the conclusion that it was for the best interest of the children that their custody remain with their maternal grandmother and her husband.

Although the order of the court entered December 5, 1958 gave only temporary custody of the children to the maternal grandmother and maternal step-grandfather, we think the case of Taylor v. Meek, 1955, 154 Tex. 305, 276 S.W.2d 787, is persuasive in the instant case, which is a suit to change the custody of the children. In that case, as in this suit, the father attacked the trial court's finding that it was to the best interest of the child to remain with the grandparents. The court stated: "The point is not well taken unless the law gives the father custody where there is no finding that he is not a fit person, because in this record there is evidence which does support the trial court."

■ It cannot now be questioned that at the time of the court's order of December 5, 1958 in the former suit, it was to the best interest of the children that they be not removed from the custody of the maternal grandparents. Since a change of custody disrupts the child's living arrangements and the channels of a child's affection, a change should be ordered only when the trial court is convinced that the change is to be a positive improvement for the child. Taylor v. Meek, supra. In our opinion the trial court in the present suit did not abuse his discretion in determining that it was in the best interest of said minors that their custody be continued and vested in appellees.

Judgment affirmed.