Gertrude A. SMITHEAL, Appellant,

v.

William Toby SMITHEAL, Appellee.

No. 17572.

Court of Civil Appeals of Texas,
Fort Worth.

Jan. 24, 1975.

Rehearing Denied Feb. 21, 1975.

Robert L. McDougal, Denver, Col., for appellant.

Garland Flowers, Fort Worth, for appellee.

OPINION

BREWSTER, Justice.

William Toby Smitheal sued his wife, Gertrude Smitheal, for a divorce, and for custody of a child, Edna Smitheal. Mrs. Gertrude Smitheal cross-acted for a divorce and for custody of the child. The case was tried non jury. The trial court rendered a judgment which granted a divorce to each party; the custody of the child, Edna Smitheal, was awarded to Edna Holderness, the paternal grandmother (who was not a party to the suit); the child's mother, Gertrude Smitheal, the appellant here, was granted visitation rights as follows: she was to have the child with her during the summer months from one week after the closing of the public schools

of the City of Fort Worth until one week before the opening of the Fort Worth Public Schools, and in addition thereto is to have the child with her for one-half of the Christmas holidays, and any other weekend when she is able to be in the Fort Worth area provided that it is no more than one weekend visit per month. The mother was ordered to pay $15.00 a week child support. This is an appeal by the mother, Mrs. Gertrude Smitheal, from that decree. The trial court did not file findings of fact and conclusions of law and he was not requested to file any. The father did not appeal.

We affirm.

The first point of error is that the court erred in awarding the custody of the child to Edna Holderness, the paternal grandmother.

We overrule that point.

Appellant's argument is that the court had no legal right to award the custody of her daughter to the paternal grandmother in this case because she, the mother, wanted the child's custody and was not found by the trial court to be an unfit person to have such custody. She argued that in such a case as that it is mandatory that the court award the custody of the child to its parent.

■ This contention is not the law in Texas. The general rule is that the legal right to the custody of a child rests in the parents. But the courts can terminate that right and award custody of a child to a third party without first adjudging the parents to be unfit, where it is in the best interests of the child to do so. See Gibson v. Hines, 511 S.W.2d 546 (Waco, Tex.Civ. App., 1974, no writ hist.); McBrien v. Zacha, 351 S.W.2d 101 (Dallas, Tex.Civ.App., 1961, ref., n. r. e.); and Scozzari v. Curtis, 398 S.W.2d 819 (Fort Worth, Tex.Civ. App., 1966, no writ hist.).

■ And in instances where the parents have voluntarily surrendered custody of their child to a third person and left its custody there for a considerable period of time, as was the case here, and later seek to regain the custody of that child, the primary question to be decided is what would be for the best interest of the child. Even if a parent was a fit and proper person to have custody he could still lose such a case if it was in the child's best interest that its custody be placed with a third person. McBrien v. Zacha, supra; Lakey v. McCarroll, 134 Tex. 191, 134 S.W.2d 1016 (1940); Dunn v. Jackson, 231 S.W. 351 (Tex.Com.App., 1921, op. ad.); and Herrera v. Herrera, 409 S.W.2d 395 (Tex. Sup., 1966).

■ Another rule of law applicable in this case is that the decision in a child custody case is a matter that lies within the sound discretion of the trial court. The trial court's decision in the case will not be disturbed on appeal unless the record shows that the trial court abused its discretion in making the custody award. Carter v. Carter, 318 S.W.2d 471 (San Antonio, Tex.Civ.App., 1958, no writ hist.); Herrera v. Herrera, supra; Gibson v. Hines, 511 S.W.2d 546 (Waco, Tex.Civ.App., 1974, no writ hist.); and Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955).

In passing we will dispose of another contention that appellant urges in connection with her first point of error.

Article 4639, Vernon's Ann.Texas Civ. St., provides that, "The court shall have power, in all divorce suits, to give the custody . . . of the children to either father or mother, . . . ."

■ She contends that the court's action in this divorce case in awarding the child's custody to the grandmother instead of to one of its parents was unlawful and should be set aside because it was in violation of that statute. We overrule that contention.

The following is from Lakey v. McCarroll, supra, 134 S.W.2d at page 1020: "In spite of the fact that Article 4639 only mentions the father and the mother, it is settled that, under the statute just men-

tioned, and under its constitutional and equity powers, a district court has power, in a divorce decree, to award the custody of the children of the marriage involved in the divorce action, to a third person, when the welfare of such children requires such action. (Cites cases.)"

And see 20 Tex.Jur.2d 660, Divorce and Separation, Sec. 331, for a number of other cases holding that appellant's contention is without merit.

■■■ No findings of fact or conclusions of law were filed in this non jury case by the trial court and the record does not show that any were requested. The law is, that where these facts are true, the appellate court must affirm the judgment of the trial court if it can be upheld on any legal theory that finds support in the evidence. Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup., 1968), and Crawford v. Boyd, 453 S.W.2d 232 (Fort Worth, Tex. Civ.App., 1970, ref., n. r. e.). In such a case the trial court's judgment implies that all necessary fact findings were made by the trial court in support of the judgment. And in determining whether there is any evidence to support the judgment and the implied findings of fact incident thereto, the appellate court can consider only that evidence that is most favorable to the issue and must disregard entirely that which is opposed to it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950), and Crawford v. Boyd, supra.

With the above rules in mind we will proceed to set out some of the evidence in the case that tends to support the trial court's award of custody to the grandmother, Edna Holderness.

The plaintiff, William Toby Smitheal, is a black man. The defendant and cross plaintiff, Gertrude Score Smitheal, is a white woman. She is licensed to practice law in Colorado. In 1965 they both lived in Denver where she practiced law. In 1965 they started going together and having sexual intercourse and continued to do so often until their marriage in November, 1969. In 1968 Mrs. Smitheal told Smitheal that he was about to become a father—that she was pregnant. They then came to Fort Worth and stayed with his mother, Edna Holderness, who lived in Fort Worth. The child was born on November 14, 1968. The birth certificate showed the child's father to be William Theodore Smitheal. Two days after the child was born the mother brought the child to the paternal grandmother's home in Fort Worth. She had stayed there herself for the three months preceding the child's birth in order to keep people in Denver from knowing she was pregnant. The appellant and William Smitheal stayed at Edna Holderness' home about two days after the child was released from the hospital and then both got in a car and returned to Denver, leaving the child in the custody of Mrs. Edna Holderness at her home in Fort Worth. This occurred in November, 1968. Continually, from the child's birth to the present date, the child's home has been with this paternal grandmother. The mother did not want others to know she was having the child. Since its birth Mrs. Smitheal has come to Fort Worth two or three times a year to see the child. Smitheal could not marry the appellant before the child was born because he was already married. Mrs. Smitheal was his lawyer and when she procured Smitheal's divorce they went to Raton, New Mexico, and were married in about November, 1969. Mr. and Mrs. Smitheal did not reside together in Denver because she did not want her parents to know of this marriage. Smitheal and Edna Holderness each testified that Mrs. Smitheal had contributed very little money toward the child's upkeep since its birth. She did send it some second-hand clothes. She never offered to take the child back to Colorado until this suit arose. In November, 1972, Mrs. Smitheal came to Fort Worth to live, but she and Smitheal separated in January, 1973, and this divorce suit was filed. Smitheal and his mother have taken care of all of the child's needs —have done all the work. The mother has

done no more for the child than to baby-sit and play with it while she was visiting. The paternal grandmother is 76. Her husband is 76. They live in a seven-room house in Fort Worth with their 22 year old daughter, a college student, and with their son, William Smitheal, the child's father. He is a high school graduate and lacks only 20 hours of having a college degree. Mrs. Smitheal, since sometime after the divorce suit was filed, has started claiming that William Smitheal was not the father of Edna Smitheal. She claims that an ex-convict to whom she was not married, who did legal briefing for her, is the child's father. In the first pleading she filed in this case she stated that Smitheal was the child's father. Smitheal says she did not come to see the child from December, 1971, to the last of September, 1972. He was, during all that time, living at his mother's house and helping support and care for the child.

During the trial Mrs. Smitheal started contending that Smitheal was impotent—that he was incapable of having an erection. On other occasions she admitted that she had intercourse with him and that their sex relations were satisfactory. She sought by that testimony to bolster her contention that Smitheal was not the father of the child.

Smitheal testified that Mrs. Smitheal never did support either him or their child as she has contended.

Edna Holderness testified in substance that: it was over six months after the baby's birth and after Mrs. Smitheal had first returned to Denver before she returned to Fort Worth to see the child; she then stayed for two or three days and it was then around the end of that year (1970) before she returned for her second visit; the child has been with the grandmother in her home since birth (November, 1968) with the exception of seven weeks in the summer of 1973 when a court order in this case allowed the child to visit with Mrs. Smitheal for that period of time; during the entire period after 1968 Mrs. Smitheal would visit the child an average of one or two times a year for two or three days; she would only play with the child while the grandmother did all of the work in caring for her; the mother has never sent the grandmother any money ("not a dime") for the support of the child; she was 73 at trial time; is in good health; has never asked the mother for money for support of the child; her son, the father of the child, about four months after the child's birth, came to live with her and the child and has lived there ever since; Mr. Smitheal has helped over the years with the care and support of the child; her 22 year old daughter also helps her with the child; the child calls her grandmother Mama.

Smitheal has at all times recognized Edna as being his child. He said he quit a government job that he had had for 25 years in order to bring the mother of the child to Fort Worth to give birth to the child.

Mrs. Smitheal testified that Edna Smitheal's father is one Harry Reach, who researched law for her; she did not know that Reach was an ex-convict when she hired him; she had sex relations with him during 1967 and 1968; she says she returned to Denver after the child's birth so she could practice law and make a living; and that she and Smitheal had sex relations up until the night before he finally left her in January, 1973.

There was also evidence showing that the appellant, Mrs. Smitheal, became the mother of another child, a boy, in 1966, that was also born out of wedlock; a picture of that child is in evidence; Mrs. Smitheal admitted that the only correct statement on that child's birth certificate was the date of its birth; its birth certificate stated that that child was white; Mrs. Smitheal said that she had the birth certificate drawn wrong to protect that child's father, A. D. Williams, a prominent realtor; that the child's name was Shelly; and

Mrs. Smitheal said that this child spent the first eight months of its life living with a nurse in Aurora, Colorado.

Shelly's birth certificate showed his father to be one John Chandler.

Marie Williams, the wife of A. D. Williams, testified: she has known Mrs. Smitheal for 20 years; that her husband was not Shelly's father; that Mrs. Smitheal brought Shelly to live with them at six or seven months of age, telling her that Shelly was the son of a rich client of hers and Mrs. Williams agreed to keep the child for $80.00 a month; Mrs. Smitheal only paid her four of such payments and then quit paying; Mrs. Williams has kept the child full time for over five years; the Williams have been that child's sole support for the last five years; and that Mrs. Smitheal did not visit the child while they had it, even though she is its mother.

We recognize the fact that there is testimony in the record from Mrs. Smitheal that contradicts a lot of the testimony that we have hereinabove set out. It is obvious, however, that the trial court did not believe all of the testimony of Mrs. Smitheal. A reading of the statement of facts by an impartial person will readily reveal why the trial court refused to believe a great part of her testimony.

In applying for the birth certificate for Edna, Mrs. Smitheal stated that the father of that child was the plaintiff, William Smitheal. She told Smitheal that he was the child's father. She told her first attorney, Mr. Hooper, the same thing. In the first pleading she filed in this case she alleged that Smitheal was the father of Edna. During the trial, however, she testified that her prior statements to the effect that Smitheal is Edna's father are untrue. She then claimed that Smitheal is not Edna's father and that Harry Reach was the child's father.

To back that contention up she testified that Smitheal was impotent; that he could not have an erection, and thus could not

father the child. She on other occasions admitted having intercourse with Smitheal and that her sex relations with him were satisfactory and that they continued until the night before Smitheal left her in January, 1973.

In getting the birth certificate for her other child, Shelly, she named his father as John Chandler. During the trial she had contended that it is untrue that Chandler is Shelly's father and testified that a man who is now dead (A. D. Williams) is the child's father.

The evidence also shows that Mrs. Smitheal appeared before a case worker who investigated this case and that when asked to relate the true facts she gave one story. A few months later she was asked to again relate to this same investigator the facts of the case and the facts she then related varied in a number of ways from the story she first related.

By her own admissions Mrs. Smitheal, in the past, has not always told the truth.

It is easy from this record to tell why the trial judge obviously refused to believe, in many respects, the testimony in the case that was given by Mrs. Smitheal.

From the evidence before it the trial court here would have been justified in believing that Mrs. Smitheal, up until the time the divorce case was filed, had during the major part of their lives, pretty well farmed out the custody of her two children to be reared by others. And one of the best ways to try to find out what a person will probably do in the future is to examine the tracks that he has made in the past.

The evidence would justify the court in believing that the parents voluntarily surrendered custody of this child to its grandmother for a considerable period of time and that it would now be for the best interests of the child to leave its custody with her.

We also hold that the trial court did not abuse its discretion, under the facts

of this case, in awarding custody as it did. Cases that we believe support this holding are: Gibson v. Hines, 511 S.W. 546 (Waco, Tex.Civ.App., 1974, no writ hist.); McBrien v. Zacha, 351 S.W.2d 101 (Dallas, Tex.Civ.App., 1961, ref., n. r. e.); Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955); and Scozzari v. Curtis, 398 S.W. 2d 819 (Fort Worth, Tex.Civ.App., 1966, no writ hist.).

Appellant's second point of error is that the court erred in applying the No Fault divorce law, since the old law applied at the time the marriage was contracted.

Her contention under this point is that the court erred in applying the "No Fault" Divorce law (V.T.C.A., Family Code, Sec. 3.01) to the facts of this case in determining whether Smitheal was entitled to a divorce from her. She argues that marriage is a contract and that the marriage between these parties was entered into in November, 1969, in Raton, New Mexico. She says that since the marriage is a contract that the law relating to divorce that was in effect at the time of the marriage would have to be applied in determining if Smitheal was entitled to a divorce from her. She says the court erred in applying the new "No Fault" Divorce law in making that determination in this case.

We overrule the point.

The law is that each state, acting through its Legislature, has the exclusive right and power to regulate, control and prescribe and *change* conditions for a divorce of those residing within its territorial limits. 27A C.J.S. Divorce § 8, p. 25. See Pappas v. Pappas, 146 S.W.2d 1115 (Fort Worth, Tex.Civ.App., 1941, no writ hist.) and LeFebvre v. LeFebvre, 510 S. W.2d 29 (Beaumont, Tex.Civ.App., 1974, no writ hist.).

In any event, there is no prejudicial error shown even if the court did apply the wrong law in deciding whether Smitheal was entitled to a divorce.

In this case appellant also asked to be divorced from Smitheal. She urged as grounds cruelty, nonsupport and adultery. These were grounds for divorce under the old law. The trial court granted her the divorce as she had prayed for. No error that could prejudice her in any way is shown by the fact that the court also granted to Smitheal a "no fault" divorce which also terminated their marriage.

Appellant's third point of error is that since the child was born in 1968 the custody law in effect then should have been applied in determining the rights of the parties to the custody of the child. She says the court erred in applying the law that came into effect after the divorce was filed. We overrule the point.

The law in effect both at the time the child was born and at the time of the marriage was applied by the trial court in determining the question of custody of the child. This is shown by cases hereinabove cited such as Lakey v. McCarroll, 134 Tex. 191, 134 S.W.2d 1016 (1940) and McBrien v. Zacha, 351 S.W.2d 101 (Dallas, Tex. Civ.App., 1961, ref., n. r. e.).

Appellant's point of error No. IV is that the court erred in finding that William Toby Smitheal was the father of the child. We overrule it.

There was ample evidence, some of which is hereinabove referred to, to support the court's finding on this issue. Mrs. Smitheal's own admissions were ample evidence to support that finding.

In her point of error No. V appellant says that the trial court abused its discretion in applying liberal rules of evidence to petitioner's case and in severely limiting respondent's evidence in its findings, and the court ignored many pages of testimony and exhibits.

We overrule it. It is of a scatter-barrelled nature. Neither the point nor the argument under it points out any particular evidence that the trial court excluded that appellant says was so prejudicial as to constitute a reversible error. She does not point out any prejudicial error committed by the trial court in admitting evidence.

■ We hold that the record does not show an abuse of discretion by the trial court as is contended in this point of error.

■ Appellant's sixth point of error is that basic fundamental constitutional rights of a mother and child were violated and disregarded in the trial and decision in the case and there was invidious discrimination. We overrule the point.

During pendency of the suit a visitation schedule had been set up by the court. On one occasion when the child had been returned by its mother after a visit someone advised the judge that the child had bruises on it that could have resulted from molestation of the child. The judge then ordered, without a hearing, that further visitations with the mother be postponed until a hearing be had on it. When a hearing was later had it developed that there was no foundation for the accusations.

■ Whether this was right or wrong it could not be an error for which this case can be reversed. It did affect the mother's visitations during pendency of the suit, but did not affect the judgment being appealed.

■ Most of appellant's remaining argument under the point is directed to her contention that the trial court was prejudiced against her because she married William Smitheal. We overrule that contention because the record does not support it.

We have considered all of appellant's points of error that are urged in her brief, and overrule each one of them.

The judgment is affirmed.