526 S.W.2d 135 (1975)
In the Interest of R---- D---- P----, a child.
No. 18550.
Court of Civil Appeals of Texas, Dallas.
March 13, 1975.
Rehearing Denied April 10, 1975.
Kurt Philipps, Morgan, Shumpert, Huff, Philipps, Mosley & Co., Kaufman, for appellant.
William Woodburn, Dallas, for appellee.
AKIN, Justice.
This is an appeal from a judgment of a juvenile court of Dallas County terminating the parental rights of appellant, the natural mother of the child, and appointing appellee as managing conservator. Trial was had before the court without a jury. We were advised in oral argument before this court that the guardian ad litem appointed by the trial court to represent the interests of the child joins in appellee's brief and the contentions presented here.
The child in question was born in December 1973. From the time of her birth to the day of trial, the natural father has been out of state serving in the armed forces. Although no divorce action has been filed, it was established that after February 1974, the marriage was beyond reconciliation. The rights of the natural father are not in issue since he has executed an affidavit of relinquishment.
On 15 July 1974, appellee initiated action to terminate the parent-child relationship between appellant and the child, under the provisions of Tex.Family Code Ann. § 15.02(1)(C) and (D) (Vernon 1975), which provides:
A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:
(1) the parent has:
. . . . .
(C) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or
(D) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child ....
. . . . .
(2) termination is in the best interest of the child.
*136 The trial court found that the appellant knowingly placed the child, and allowed her to remain, in conditions and surroundings which endanger the physical and emotional well-being of the child; that the appellant engaged in conduct which endangers the physical and emotional well-being of the child; that termination of the parent-child relationship between appellant and the minor child is in the best interests of the child; that appellee is a proper person to be appointed as managing conservator of the child with the rights, powers, privileges and duties set out in Tex.Family Code Ann. § 14.02(b)(1) and (7) (Vernon 1975); and that parental access or possession of the child by appellant is not in the best interest of the child and parental possession or access would endanger the physical and emotional welfare of the child.
Appellant attacks all of the above enumerated findings of fact, except the finding that appellee is a proper person to be appointed as managing conservator of the child, on the basis of no evidence and, in the alternative, insufficient evidence to support the trial court's findings. We do not agree with appellant's contentions.
The rule is well settled that the decision in a child custody case is a matter primarily within the sound discretion of the trial court. This is because the trial court faces the parties and witnesses, has the opportunity to observe their demeanor and personalities, and feels the forces, powers and influences that cannot be discerned by merely reading the record. Therefore, the trial court is in a better position to analyze the facts, weigh the virtues, and determine what will be in the minor child's best interests. Silva v. Aranda, 223 S.W.2d 333, 334 (Tex.Civ.App.San Antonio 1949, no writ; by Justice Norvell); Accord, Herrera v. Herrera, 409 S.W.2d 395, 396 (Tex.1966); Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, 790 (1955); Gibson v. Hines, 511 S.W.2d 546, 549 (Tex.Civ.App.Waco 1974), no writ); Pace v. Curtis, 496 S.W.2d 931, 933 (Tex.Civ.App.Houston [14th Dist.] 1973, no writ); Cravens v. Eisenbach, 487 S.W.2d 254, 255 (Tex.Civ.App.Austin 1972, no writ); Carter v. Carter, 318 S.W.2d 471, 473 (Tex.Civ.App.San Antonio 1958, no writ). The sole question, therefore, presented here is whether the trial court abused its discretion in terminating appellant's parental rights. We hold that the trial court did not abuse its discretion because sufficient evidence was presented upon which to base its judgment.
The undisputed testimony of various witnesses, including appellant, established that appellant had sexual relations with a variety of men during the time prior to the filing of this suit. Many of these lovers appeared as witnesses.
The record reveals that at least five independent witnesses testified that they saw appellant frequently spank the baby when she was from two to four months of age. Appellant admits such conduct. These spankings, described by three witnesses as "hard, leaving red marks," were usually prompted by the child's crying. One witness, who had an affair with appellant, testified that he treated his dog better than appellant treated the baby and that he terminated the affair because of the frequent spankings.
Witnesses testified that appellant would leave wet diapers on the baby for long periods of time and failed to feed her properly. One witness stated that appellant fed her sour milk while another witness commented that the baby was seldom given food other than milk and that she was so tiny and skinny that she "was afraid to hold her." Appellant would put the child on a bare matters without cover when the air conditioning thermostat was set at sixty-degrees fahrenheit.
Many witnesses described the filthy conditions in which appellant and the child lived. One testified that the apartment was "extremely dirty" and that "there were coke bottles all over the floor, baby clothes were strewn all over the bedroom where dogs had slept on them ... dog mess *137 all over the clothes ... the place looked like a junkyard." This testimony is typical of numerous witnesses.
Furthermore, from February 1974, to the middle of July 1974, appellant moved in and out of various lovers' apartments. Sometimes she took the baby with her, and sometimes she left her for long periods with various babysitters.
On 6 May 1974, appellant arranged for appellee to babysit while appellant worked. The arrangements were such that appellant would leave the child with appellee and her husband at 3 o'clock p. m. every day and was to pick her up at 11 o'clock p.m. on the same day. The record discloses, however, that appellant would rarely come for the baby, but would leave her with appellee for days. Later, appellee and appellant decided that the baby would stay with appellee from 3 o'clock p. m. until 7 o'clock a. m. when appellee was to return the baby to appellant. Although the baby was returned, appellant testified that she usually slept until 1 o'clock p. m. occasionally waking up to take care of the baby.
On 23 May 1974, appellee stopped attempting to return the baby to appellant because she was fearful for the child's welfare and safety. Appellant was often asleep with a male companion when appellee delivered the baby at 7 o'clock a. m. On one occasion, appellee found appellant gone and the apartment occupied by an intoxicated man.
During the entire period from 6 May 1974 to 12 July 1974, appellant made little or no effort to even see her baby although appellee's babysitter lived within a five-minute walk. In response to the question, "Did you make any effort during the month of June to get your child during the hours of 7 o'clock in the morning until 3 o'clock in the afternoon?", appellant replied, "No, sir." In fact, the record shows a complete lack of concern for the welfare of the child on the part of appellant. All of such conduct on the part of appellant is evidence upon which the trial court could rest its findings.
It has long been held in Texas that there is a presumption that the best interest of the child will be served by permitting the natural parent to have custody of the child. This, however, is a rebuttable presumption. Dunn v. Jackson, 231 S.W. 351, 353 (Tex.Comm'n App.1921, holding approved); Ham v. Cavette, 357 S.W.2d 438, 441 (Tex.Civ.App.Houston 1962, writ ref'd n.r.e.); Binion v. Mathis, 171 S.W.2d 512, 513 (Tex.Civ.App.Amarillo 1943, no writ); Taylor v. Taylor, 42 S.W.2d 455, 456 (Tex. Civ.App.Waco 1931, no writ); Smitheal v. Smitheal, 518 S.W.2d 842 (Tex.Civ.App. Fort Worth 1975, no writ); Gibson v. Hines, 511 S.W.2d 546 (Tex.Civ.App.Waco 1974, no writ). We agree with appellant that the burden of proof under Tex.Family Code Ann. § 15.02 (Vernon 1975) is upon the appellee. Appellee has sustained this burden as evidenced by the findings of the trial court and the record here. See Richardson v. Althoff, 415 S.W.2d 520 (Tex.Civ.App. Dallas 1967, no writ); Huff v. Stafford, 429 S.W.2d 620 (Tex.Civ.App.Dallas 1968, writ dism'd).
Appellant contends that appellee has the burden of proving that the natural parent at the time of filing this action was an unfit parent. We cannot agree. Tex.Family Code Ann. § 15.02 (Vernon 1975) places no such burden upon petitioner. Even precode decisions held that a court may terminate parental rights without finding that the parent is unfit, where it is in the best interest of the child. McBrien v. Zacha, 351 S.W.2d 101 (Tex.Civ.App.Dallas 1961, writ ref'd n.r.e.); Scozzari v. Curtis, 398 S.W.2d 819 (Tex.Civ.App.Fort Worth 1966, no writ).
Accordingly, we conclude that no abuse of discretion is shown and, therefore, we affirm the judgment of the trial court.