**Howard W. OETTING, Appellant,**

v.

**FLAKE UNIFORM & LINEN SERVICE, INC., Appellee.**

**No. 17814.**

Court of Civil Appeals of Texas, Fort Worth.

June 23, 1977.

Gibson, Darden & Hotchkiss, and Tony Hotchkiss, Wichita Falls, for appellant.

Sherrill, Pace, Rogers, Cosnoe & Morrison, and Lonny D. Morrison, Wichita Falls, for appellee.

## OPINION

SPURLOCK, Justice.

This is a suit against Howard W. Oetting as guarantor of the obligations of The Baker Corporation under two garment rental contracts with Flake Uniform & Linen Service, Inc. Baker Corporation failed to pay its monthly obligation and Flake Uniform obtained judgment for liquidated damages. Oetting appeals on the ground the contract provision for liquidated damages is unenforceable because it provides for a penalty.

We affirm.

This suit originally was brought by Flake Uniform against The Baker Corporation, and Howard W. Oetting, Tommy Baker and Maurice Baker, individually. The Baker Corporation became insolvent and ceased doing business and the plaintiff was unable to serve either of the two Bakers who were dismissed from the suit. Baker Corporation as customer and Flake Uniform as supplier entered into an original garment rental contract on March 13, 1972, and a second contract dated February 10, 1975. In June, 1975, the parties entered into an amendment to the garment rental contract and a guaranty agreement. In summary form, the guaranty agreement recited that Baker Corporation was in default in various sums of money under the terms of existing contracts. The parties agreed to the amount of these obligations and that such indebtedness had matured and also agreed to pay attorney fees but provided that these past due installments should be paid in six monthly installments.

The other parties to the suit guaranteed the payment of these obligations. A third cause of action was for the payment of various checks that had been paid for this service which had been dishonored by the bank. The fourth cause of action was for the sum of $15,495.66 as liquidated damages for the loss of profits for the balance of the term of the rental agreement. The fifth cause of action was for the failure to return to plaintiff uniforms that had been supplied to The Baker Corporation, and the sixth cause of action was for attorney fees as provided for in the contracts.

After Oetting had been served and answered, Flake Uniform filed detailed request for admissions covering the entire transactions in all the matters in controversy and included in said request for admissions a request that Oetting admit the allegations of fact in each paragraph of plaintiff's petition. These were each by separate request.

Oetting did not answer the request for admissions and a motion was filed for an order deeming the request for admissions to be admitted. This was not contested and the court rendered judgment and signed an order deeming admitted all the request for admissions and allegations contained in plaintiff's trial pleadings.

Flake Uniform filed a motion for partial summary judgment. The court granted this summary judgment for all sums of money due under the contracts and for services that had theretofore been rendered. This was in the sum of $4,860.77.

There was no dispute concerning the provision for liquidated damages for the breach of the contract from the date of its termination, because of non payment of the monthly service charge that would accrue in the future, until the end of the term of the contract. This sum was in the amount of $15,495.66 plus interest and attorney fees. The remainder of the case was then tried before the court without a jury and resulted in the court making the partial summary judgment final and incorporating it into the final judgment and awarded Flake Uniform 85% of the amounts it would have received had the contract been fully performed after the date it was terminated because of the non payment of the monthly sums due, plus all amounts owing before the termination, plus $3,174.37 attorney fees and interest.

■ No findings of fact or conclusions of law were filed and the record does not reflect that any were requested. Therefore, if there is any legal theory supported by the evidence on which to affirm, this court must do so. *Smitheal v. Smitheal*, 518 S.W.2d 842 (Tex. Civ. App., Fort Worth 1975, writ dism'd), cert. denied, 423 U.S. 928, 96 S.Ct. 277, 46 L.Ed.2d 256.

■ These contracts provide for actual damages. Both contracts show on their face that the ascertainment of damages is difficult, at best. The defendant, by both allegation and proof, must raise the issue and assume the burden of proving the amount of the actual damages for the purpose of showing an absence of approximation between the actual loss and the stipulated sum. *Smith v. Lane*, 236 S.W.2d 214 (Tex. Civ. App., San Antonio 1950, no writ).

See also *Southern Plow Co. v. Dunlap Hardware Co.*, 236 S.W. 765 (Tex. Civ. App., Dallas 1922, no writ); *Walsh v. Methodist Episcopal Church*, 212 S.W. 950 (Tex. Com. App. 1919, jdgmt. adopted).

■ It follows then that plaintiff need not allege or prove actual damages where it cannot be said that the damages were certain, apparent or ascertainable. *Pippin Bros. v. Thompson*, 292 S.W. 618 (Tex. Civ. App., Waco 1927, writ dism'd); *Schwarz v. Lee*, 287 S.W. 519 (Tex. Civ. App., Fort Worth 1926, writ dism'd); *McElroy v. Danciger*, 241 S.W. 1098 (Tex. Civ. App., Amarillo 1922, no writ).

■ In *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484 (1952), the court stated that to be enforceable as liquidated damages the damages must be uncertain and a stipulation must be reasonable. This must have existed at the time when the contract was executed. What the courts really do, in this type of case, is to permit the parties to estimate in advance the amount of damages, provided they adhere to the principle of just compensation. That court then stated: "Restatement of Contracts, Sec. 339, accurately expresses the rule as follows: "'(1) An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"'(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"'(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.'"

Oetting assigns only two points of error to the effect that the liquidated damage provision is unreasonable in view of the nature of the several breaches upon which it is possible for it to become operative and it is unreasonable due to the amount of damages stipulated.

Paragraph A of the General Terms and Conditions of the contract provides, in pertinent part, ". . . Upon the failure of the Customer to pay Supplier as set out above, Supplier may, at its option, terminate this Agreement and, if Supplier so elects, then the provisions of paragraph D below shall apply. . . ."

Paragraph D provides:

"Inasmuch as the breach of this Agreement by Customer will cause a serious and substantial damage to Supplier, and because it will be difficult if not impossible to prove the amount of such damage, Customer agrees that in case of breach of this Agreement by failure to pay Supplier as agreed, or by reason of any other breach on the part of Customer, it will pay to Supplier within ten (10) days after the date of termination all accrued charges for garment rentals incurred prior to the date of termination together with an additional amount of money equal to 85% of the Rental Charges which Customer would have been obligated to pay Supplier for garment rental from the date of termination until the end of the existing Contract Period as liquidated damages; such sum being agreed upon by the Supplier and by the Customer as the amount which Supplier will be damaged by breach of this Agreement on the part of Customer."

■ It is clear that Paragraph D, the liquidated damage provision, can only be invoked in the case of termination of the entire contract, since the measure of damages is 85% of the charge if performed, *after the date of termination* until the end of the contract period. There is no provision allowing termination of the contract, except in paragraph A, in the case of breach by failure to pay. Therefore, the liquidated damage provision can only come into play if: (1) the customer fails to pay as agreed; and (2) the supplier terminates the contract.

It is true that paragraph D also recites ". . . or by reason of any other breach on the part of Customer, . . ." but that appears to have been inserted in an abundance of caution, since termination *must* occur, and can only occur on nonpayment. The clause is mere surplusage, and can have no effect. Only the most major

breach of all, nonpayment, can trigger paragraph D, and liquidated damages. This was not the situation in *Stewart v. Basey*, supra, where the breach was trivial.

We overrule point of error no. 1.

The judgment recites that ". . . the liquidated damage provision set forth in the Garment Rental Contract between the parties is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. . ."

As noted above, that judgment must be affirmed if it can be upheld on any legal theory supported by the evidence. Further, we are obliged to consider only that evidence which tends to support the court's finding, disregarding all that which is opposed to it. *Smitheal v. Smitheal*, supra; *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950).

The only witness who testified was Leon Edward Flake, who is president of plaintiff's corporation. In order to service the Baker contract, Flake had to obtain the sizes of the employees who were going to use the uniforms; buy new pants, shirts and uniforms; place thereon the name of the company, the name of the employee and other material; and replace them when they became worn and when employees would terminate and were replaced by other employees. He had a vast stock of used uniforms which he valued at 5¢ each. He attempted to replace worn uniforms with used clothing but, if he could not, the new ones cost approximately $12.50 each. These uniforms were picked up by a route man and the laundry was done in lots so that each driver's entire pickup load of clothing was washed in one machine, no matter what size the load. Flake operated several companies, including a chemical company and unrelated businesses, out of his central place of business. His route man serviced an account across the street from Flake Uniform. His route men were on salary. His bookkeeping was done by salaried personnel for this business and other unrelated businesses. Their salary remained the same after the Baker account was terminated. There was no difference in his cost of operation or his overhead after the Baker account was terminated. The major cost was a "front-end" cost, in that the uniforms were purchased and sized; the emblems and advertisement were purchased and placed thereon; the collars and waistbands were taped for identification; and the salesmen were paid a commission when the contracts were obtained.

Flake further testified that the fact that The Baker Corporation dropped out didn't cause his cost to go down any. "My revenue just ceased . . . from that particular account."

Under the facts in this case it would be very difficult to determine in advance what actual damages would be sustained as a result of Baker Corporation's failing to pay its rental contract and the contract then having to be terminated.

We have examined with care the cases cited in support of the contentions made by Oetting. In each instance, we concluded that the authorities relied upon by Oetting are distinguishable from the cases we consider controlling.

We hold that the stipulations for liquidated damages are reasonable and find that, when the contract was made, the actual damages were uncertain. Any attempt to establish the actual damages would be fraught with such uncertainties and difficulty as to require this court to sustain the agreements in this case for liquidated damages. Similar contracts for liquidated damages have been approved in *Blakeway v. National Credit Corporation*, 439 S.W.2d 155 (Tex. Civ. App., Austin 1969, writ ref'd n.r.e.); *Blakeway v. General Electric Credit Corporation*, 429 S.W.2d 925 (Tex. Civ. App., Austin 1968, writ ref'd n.r.e.); *Bowen v. Virginia Lee Candies*, 44 S.W.2d 502 (Tex. Civ. App., Texarkana 1931, no writ); *Hyde v. Claude Neon Federal Co.*, 157 S.W.2d 952 (Tex. Civ. App., Eastland 1941, writ dism'd); *White v. Wilbanks*, 144 S.W.2d 941 (Tex. Civ. App., Amarillo 1940,

no writ); *Liberty Sign Co. v. Newsom*, 426 S.W.2d 210 (Tex. 1968).

Under the undisputed facts in this case reflecting that there was practically no decrease in expenses of operation of the supplier and the difficulty of ascertaining the actual damages, the finding of the court that 85% of the rental charges that Baker would have paid, if he had fully performed the contract is a reasonable forecast of just compensation for the harm that was caused by the breach and that this harm was incapable or very difficult of accurate estimation at the time the contract was executed.

We overrule point of error no. 2.

Judgment affirmed.