**SPEEDI LUBRICATION CENTERS, INC., Appellant,**

v.

**ATLAS MATCH CORPORATION, Appellee.**

**No. 18201.**

Court of Civil Appeals of Texas, Fort Worth.

March 6, 1980.

Winstead, McGuire, Sechrest & Trimble and Jay Madrid, Dallas, for appellant.

Ungerman, Hill, Ungerman, Angrist, Dolginoff, Teofan & Vickers, and Jeffry R. Davis, Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

Speedi Lubrication Centers, Inc. has appealed a final judgment in favor of Atlas Match Corporation which had sued it for breach of contract. Jury was waived. No findings of fact or conclusions of law were requested or made.

We affirm.

Speedi and Atlas entered into a contract which provided for Speedi to buy 400,000 advertising matchbooks from Atlas, to be paid for within 30 days of delivery of each shipment. First delivery was to be made when Atlas was given the various addresses of the lubrication centers of Speedi.

On February 25, 1977 Atlas shipped 22 cases of the matchbooks to Speedi at 3 of its locations. The matches were received by Speedi with an invoice showing $2,167.34 as "total amount due." Terms on the invoice were "1–10 NET 30." Atlas did not receive any payment until June 1, 1977 (more than 60 days), at which time it received $1,000.00 from Speedi. Atlas by letter of August 4, 1977, declared Speedi to be in default for not paying within 30 days. No other payment was received within 10 days of the date of such letter, but Speedi did later receive a check for $1,167.00 which was returned for non-sufficient funds and subsequently replaced with a cashier's check. Mr. Morehead, assistant treasurer of Atlas, testified that, to his knowledge, Atlas had never accepted any check from Speedi in full accord and satisfaction of the contract here involved. He also stated that had it occurred he would have had to authorize any settlement. Atlas did admit to receiving the two checks for the amount of the invoice.

Speedi, in its three points of error, claims that the trial court erred in rendering judgment for Atlas because: 1. The liquidated damages provision in the contract is, in fact, a penalty; 2. Atlas failed to deliver or tender delivery of the matchbooks as required in § 2–507 of the *Uniform Commercial Code*; and, 3. Atlas, by accepting payments from Speedi, waived its right to bring this action against it.

Paragraph 6 of the contract here involved provides in part:

"6—The following shall be deemed material breaches of this agreement:

"A. Purchaser's failure to accept any shipment of matchbooks and/or packaging delivered pursuant hereto.

"B. Purchaser's failure to make any payment pursuant hereto when due.

"C. The failure of Purchaser to give Atlas written notice of any sale, merger, termination or other disposition of Purchaser's business at least thirty (30) days prior to any such event.

"D. Any oral or written repudiation of this Agreement or any part hereof by Purchaser. In the event of any such material breach, Atlas shall be entitled to pursue any and all remedies available to it pursuant to the Texas Business and Commerce Code or any other applicable statute or rule of law for any and all amounts due Atlas from Purchaser pursuant to this Agreement.

"In addition to any other such remedy, it is specifically agreed that Atlas shall be entitled to accelerate the terms of payment as set forth on the reverse side hereof to payment in full in advance for the entire undelivered balance of matchbooks and packaging ordered hereby. Upon receipt of full payment in advance, Atlas shall ship to Purchaser the undelivered balance of matchbooks and packaging ordered hereby, either at once, or according to

the delivery schedule set forth in the reverse side hereof, at the option of Atlas.

"Atlas shall have the right to recover from Purchaser the price of all matchbooks and packaging delivered and/or identified to this agreement at the time of Purchaser's breach hereof and shall be additionally entitled to recover fifty percent (50%) of the contract price of matchbooks and/or packaging ordered hereby, but not delivered or identified to this Agreement at the time of Purchaser's breach, as liquidated damages, it being agreed by Purchaser that, with respect to matchbooks and/or packaging not delivered or identified to this Agreement at the time of such breach, the actual damages, in the form of lost profits, which will be sustained by Atlas by reason of Purchaser's breach will be uncertain and difficult, if not impossible, to ascertain due to the fact that Atlas utilizes a 'process-cost system' of accounting in determining the production costs of matchbooks and packaging and cannot determine the actual costs of producing particular orders of matchbooks and/or packaging and cannot therefore, compute its profits on the match-books and/or packaging ordered hereby but not delivered or identified to this agreement due to Purchaser's breach. Purchaser agrees that the percentage as specified hereinabove, of the contract price of the matchbook and/or packaging ordered hereby, but not delivered or identified to this agreement at the time of Purchaser's breach, will be reasonable and just compensation for such breach, and Purchaser hereby promises to pay such sum as liquidated damages, not as penalty in the event of any such breach. ". . .."

"*Liquidated damages or a penalty?*" is the question here. Is the stipulation for 50% of contract price as liquidated damages reasonable and are "the actual damages . . . uncertain and difficult . . . to ascertain due to the fact that Atlas utilizes a 'process-cost system' of accounting in determining the production costs of matchbooks . . . and cannot determine the actual cost of producing particular orders . . . ."?

It was provided in the contract that the 50% of contract price "will be reasonable and just compensation for a breach." However, Chief Justice Hickman in *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, (1952) said, in effect, "it ain't necessarily so." That case enunciated as a rule for enforceable liquidated damage clauses that "the damages must be uncertain and the stipulation must be reasonable." In the *Stewart* case it was concluded that "since the contract provided the same reparation for the breach of *each and every* covenant, and since it would be unreasonable and a violation of the principle of just compensation to enforce it *as to some of them*, the provision for stipulated damages should be treated as a penalty." (Emphasis ours.)

Paragraph 6 of the contract here at issue specifically deems the following as material breaches:

1. Failure to accept shipment of matchbooks;

2. Failure to make payment;

3. Failure of purchaser to give Atlas 30 days' notice of sale, sale, termination or other disposition of its business, and

4. Any oral or written repudiation of the agreement or any part of it.

Trial court here evidently concluded that each of the four stipulated breaches above listed were not unreasonable and a violation of just compensation. Unlike the contract in *Oetting v. Flake Uniform & Linen Service*, 553 S.W.2d 793, (Tex.Civ.App.—Fort Worth 1977, no writ) where the only provision for termination of contract was "failure to pay," the case at hand has the four mentioned.

Since there are no findings of fact or conclusions of law filed in this case, if there is any legal evidence on which to affirm, we must do so. *Smitheal v. Smitheal*, 518 S.W.2d 842 (Tex.Civ.App.—Fort Worth 1975, error dism'd), cert. den., 423 U.S. 928, 96 S.Ct. 277, 46 L.Ed.2d 256.

The only testimony about the 50% liquidated figure came from Mr. Morehead, assistant treasurer of Atlas. He testified that commissions, art work, and plate production were "heavy", "up front" costs that could not be "broken down" because of Atlas' process cost system with all jobs being run through as average cost. He also testified that lost profits are liquidated damages in this case. Further, he said that factors for art work and other overhead matters were uncertain and those used for Speedi were not the same for any other customer of Atlas in 1976.

■ We hold that trial court was correct in not finding the liquidated damages clause a penalty and overrule the first point of error.

■ Speedi urges that, since Atlas failed to deliver or tender delivery of the rest of the matchbooks, section 2.507 of the *Texas Business and Commerce Code*, it was barred from recovery. We agree with Atlas that Section 1.102c does provide that provisions of the Uniform Commercial Code may be varied by agreement. Section 2.507 also provides that "tender of delivery is a condition to the buyer's duty to accept the goods and, *unless otherwise agreed*, to his duty to pay for them."

■ The contract here involved does "otherwise agree" and does provide for delivery of the matchbooks after the acceleration to full payment for the undelivered books. No payment in full (or in part) was made after Atlas' notice to Speedi of default and acceleration on any undelivered matchbooks. We hold delivery or tender of delivery unnecessary in the circumstances here and overrule the second point of error.

■ We do not agree that Atlas waived its right to action on breach of contract by accepting payment late for matches previously delivered. Atlas declared default and acceleration the same day it accepted the $1,000.00 first payment and Speedi later sent the balance overdue on the previously delivered matchbooks anyway. Atlas did not waive its right to sue on breach of contract for a payment accepted for a past

consideration. *Liberty Sign Company v. Newsom*, 426 S.W.2d 210 (Tex.1968 Reh. denied). We overrule the third point of error.

Affirmed.