Katherine TRICKEY, Appellant,

v.

Richard TRICKEY, Appellee.

No. 2–82–010–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 14, 1982.

Rehearing Denied Dec. 2, 1982.

Brown, Herman, Scott, Dean & Miles, and J. Shelby Sharpe, Fort Worth, for appellant.

Richard Trickey, Fort Worth, for appellee.

Before MASSEY, C.J., and JORDAN and RICHARD L. BROWN, JJ.

## OPINION

JORDAN, Justice.

Richard Trickey, appellee, was granted a no fault divorce under sec. 3.01 of the Family Code, effective January 1, 1970, from appellant, Katherine Trickey. The appeal is grounded on two points of error attempting to raise constitutional questions with respect to sec. 3.01.

We affirm.

Sec. 3.01 provides: "On the petition of either party to a marriage, a divorce may be decreed without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation."

The parties were married in 1959, separated in 1979 and by judgment dated November 20, 1981, appellee was granted a no fault divorce from appellant. Appellee testified at trial that his marriage had become insupportable, unbearable and impossible "because of a discord and conflict of personalities that destroys the legitimate ends of the marriage relationship," and that there was no reasonable expectation of any reconciliation. He further testified that their differences were deep-seated, that his wife "is off on a religious kick or philosophy that's totally foreign to mine. She has a philosophy that God will take care of everything and she doesn't have to do anything other than just sit back and wait." He said also that the marriage had been in a shambles for at least five years prior to the divorce hearing, that they could not talk to each other at all, and that "[m]y pulse rate would go up at least fifteen points, and my blood pressure no telling how far the minute I walked through the door of the house."

Appellee testified that he was forced to separate from appellant because his "health would not let me survive unless I got out of the house," and that his wife was completely derogatory to him, to his profession, and to his support of the family. He said there was nothing he could do that would please her.

Mrs. Trickey testified that the marriage vows she took, which were made "according to God's Holy Word," and were made in a church, were very important to her, that she meant to keep them and would keep them in the future if Mr. Trickey would return to her. She considered their marriage to be a Christian marriage governed by the Bible and she was asking the court, not to force her husband to live with her, but "[t]o prevent my husband from breaking the marriage vows."

The trial court, after granting appellee the divorce, later made findings of fact in which he found, among other things, that: 1. The marriage of petitioner and respondent had become insupportable because of a discord or conflict of personalities that destroyed the legitimate ends of the marriage relationship; 2. There was no reasonable expectation of reconciliation. The court's conclusions of law were that: 1. Section 3.01 of the Texas Family Code is applicable to this case regardless of the fact that the parties were married before that Act was passed by the legislature; 2. Section 3.01 does not violate article 1, section 16 of the Constitution of the State of Texas; and 3. Section 3.01 does not violate article 1, section 10 of the Constitution of the United States.

What she seems to be saying is that since this marriage was performed in a church, sanctioned by the Bible, and used the phrase "according to God's Holy Word" that it cannot be terminated by a court or anything else but must exist until death, regardless of how intolerable or excruciating the conditions and circumstances of the marriage may become. She is saying that a "Christian marriage" performed in a church under the Holy Bible can never end in divorce for reasons other than biblical ones. She is also in reality arguing that any marriage performed, not in a church by a minister, but by a justice of the peace or a judge can be severed by divorce in the courts, but

that a church marriage cannot be so severed. We simply cannot accept this philosophy or theory. We point out that the typical civil marriage ceremony, used by judges or justices of the peace are also Christian marriages, under appellant's theory, because it contains these words in conclusion: "Forasmuch as _____ and _____ have covenanted together in holy wedlock and witnessed the same before God and this company, and thereto have pledged their faith to each other, and have declared the same by joining their right hands, I pronounce them husband and wife. Whom God has joined together, let no man put asunder."

Appellant cites many cases containing language to the effect that the institution of marriage is of divine origin, that it is a most important relationship and is in effect the bedrock and foundation of our society. We cannot argue with that, but she goes on to say, in effect, that government, or the state, has no right to interfere with or dissolve a "Christian marriage." She particularly attacks sec. 3.01 of the Family Code as applied to this marriage or to any "Christian marriage" as a violation of the First and Fourteenth Amendment to the Constitution of the United States and Tex. Const., art. I, sec. 6. It has been many times held that the State does have a vital interest in marriage and divorce and does have the right to regulate, by legislation, both those matters.

In 1888 the Supreme Court of the United States in *Maynard v. Hill*, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654, held that marriage was a social relationship to be governed by the laws of individual states under the grant to them of constitutional police power. In *Grigsby v. Reib, et al.*, 105 Tex. 597, 153 S.W. 1124 (1913), relied on by appellant and which involved a common law marriage, the Supreme Court of Texas said: "The term 'civil contract,' as applied to marriage, means nothing now, for there does not exist the church's claim that it is a religious right. There is nothing to be differentiated by the language. It is obsolete. Marriage is not a contract, but a status created by mutual consent of one man and one woman. The method by which it is solemnized or entered into may be by proceedings prescribed by statute, or by mutual agreement with cohabitation, but, however contracted, having the same elements, and producing the status of husband and wife."

The very first Supreme Court of The State of Texas, in *Sheffield v. Sheffield*, 3 Tex. 79 (1848), while holding that in that case the evidence was insufficient to warrant the granting of a divorce on the grounds pled and raised, certainly by implication approved the right of the legislature to create laws governing divorce in Texas. The court's position in that case was that the court's only right and duty was to determine whether or not the requirements of the then existing divorce statute had been met.

In *Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942), the United States Supreme Court held that marriage and divorce were of social importance to the states, saying: "Thus it is plain that each state by virtue of its command over its domiciliaries and its large interest in the institution of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. *There is no constitutional barrier if the form and nature of the substituted service meet the requirements of due process.*" [Emphasis added.]

In *Hopkins v. Hopkins*, 540 S.W.2d 783 (Tex.Civ.App.—Corpus Christi 1976, no writ), where appellant claimed, among other things, that the no fault divorce law had deprived her, without due process, of vested personal property rights in her marital estate, the court held there was no basis for this contention and that sec. 3.01 of the Family Code was a proper enactment of the legislature. The court there said: "The state legislature has the broad power to regulate and thereby change the conditions for obtaining a divorce by its residents. Texas does not regard the marital relationship as a contract vesting rights in the

parties so as to preclude the retroactive application of amendments to the laws which govern that relationship. (Citing cases.) It is not error for a Texas Court rendering a decree of divorce to apply the no fault divorce law of this State although the marriage dissolved was celebrated in a sister state and the law of the sister state at the time of the marriage did not provide for no fault divorce. *Smitheal v. Smitheal,* 518 S.W.2d 842 (Tex.Civ.App.—Fort Worth 1975, no writ), cert. denied [423 U.S. 928], 96 S.Ct. 277 [46 L.Ed.2d 256]."

In *Smitheal, supra,* it was held that since marriage is not a contract recognized by the State, the ex post facto law does not apply. The court in *Smitheal* said: "The law is that each state, acting through its Legislature, has the exclusive right and power to regulate, control and prescribe and *change* conditions for a divorce of those residing within its territorial limits. 27A C.J.S. Divorce, sec. 8, p. 25. See *Pappas v. Pappas,* 146 S.W.2d 1115 (Fort Worth, Tex.Civ.App., 1941, no writ hist.), and *LeFebvre v. LeFebvre,* 510 S.W.2d 29 (Beaumont, Tex.Civ. App., 1974, no writ hist.)."

None of these cases, or any others we have seen or been referred to, make any distinction as to the right of the State to regulate marriage and divorce between marriages performed in a church by a minister and those performed outside the church by a judge. We think there is no such distinction, and although appellant, her counsel, and many others criticize the no fault divorce law for the reasons cited in appellant's brief, it is the law of the State of Texas, duly enacted, and must be followed. We think that such a law or policy as urged by appellant here would constitute cruel and unusual punishment and actually place one of the spouses, in effect, in a prison from which there was no parole. In the case before us, the husband testified and the court found that the marriage had become insupportable because of a discord and conflict of personalities and that there was no reasonable expectation of any reconciliation.

We respectfully but firmly reject appellant's contention that sec. 3.01 of the Family Code is unconstitutional as applied to a Christian marriage performed in a church by a minister. The trial court did not err in granting appellee a no fault divorce in accordance with his pleading and proof.

The judgment is affirmed.